**Jan KNOPPERS**

v.

**RUMFORD COMMUNITY HOSPITAL, et al.**

Supreme Judicial Court of Maine.

Argued April 27, 1987.

Decided Oct. 9, 1987.

Donna L. Zeegers (orally), Augusta, for plaintiff.

Arlyn H. Weeks (orally), Preti, Flaherty, Beliveau & Pachios, Portland, for defendants.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, WATHEN, GLASSMAN, SCOLNIK and CLIFFORD, JJ.

SCOLNIK, Justice.

The defendants, Rumford Community Hospital ("the hospital"), and Ashley O'Brien appeal from a judgment of Superior Court (Oxford County) awarding the plaintiff, Jan Knoppers, a practicing physician, wrongfully withheld wages, liquidated damages, costs and attorney's fees pursuant to 26 M.R.S.A. § 626 (Pamph.1986),[1]

---

**1.** Section 626 provides:

Any employee leaving his or her employment shall be paid in full within a reasonable time after demand at the office of the employer where payrolls are kept and wages are paid; provided that any loan or advance against future earnings or wages may be deducted if evidenced by a statement in writing signed by said employee. Whenever the terms of employment include provisions for paid vacations, vacation pay on cessation of employment shall have the same status as wages earned.

For purposes of this subchapter, a reasonable time shall mean the earlier of either the next day on which employees would regularly be paid or a day not more than 2 weeks after the day on which the demand is made.

In any action for unpaid wages brought under this subchapter, the employer shall not deduct as a setoff or counterclaim any moneys allegedly due the employer as compensation for damages caused to the employer's property by the employee, or any moneys allegedly owed to the employer by the employee, notwithstanding any procedural rules regarding counteractions; provided that any loan or advance against future earnings or wages may be deducted if evidenced by a statement in writing signed by said employee, and that nothing in this section shall be construed to limit or restrict in any way any rights which the employer now has to recover, by a separate legal action, any moneys owed said employer by said employee.

An action for unpaid wages under this section may be brought by the affected employee or employees or by the Department of Labor on behalf of the employee or employees. An employer found in violation of this section shall be liable for the amount of unpaid wages and, in addition, the judgment ren-

and from a supplemental judgment specifying the amount of those costs and attorney's fees. The defendants contend that the Superior Court erred in finding that Knoppers was an employee of the Rumford Community Hospital and that the compensation withheld constituted wages within the meaning of section 626. We agree that Knoppers is not an "employee" covered by section 626.

## I.

Knoppers rendered professional and administrative services for the hospital from January, 1981 through June 11, 1985. Defendant O'Brien was the Executive Director of the hospital. Knoppers had entered into a contract with the hospital for services under which he received a sum of $64,680 for a twelve-month period, plus an additional $1,000 a year to serve as the Director of the hospital's Emergency Department. These sums were paid to Knoppers in equal monthly installments on accounts payable vendor checks rather than payroll checks. He established his own working hours; he did not receive overtime pay and the hospital did not tell him how to practice medicine. The hospital paid for Knoppers' Blue Cross/Blue Shield coverage and his life and accidental death and dismemberment insurance under its employees' plan. He was eligible for employee rates in the hospital cafeteria as well. Knoppers paid his own income tax and social security contributions, however, and contributed to his own Keogh retirement plan.

On February 14, 1985, O'Brien informed Knoppers that a new Director of the Emergency Department had been appointed, effective February 16, 1985. As required by Knoppers' contract with the hospital, O'Brien sent him a letter on February 26, giving him ninety days' notice of the hospital's intent to terminate, and stating an intent to renegotiate the contract. On May 24, 1985, the day before Knoppers' contractual obligations were to end, he and O'Brien orally agreed that he would work through the middle of June, 1985. On June 11, 1985, he was discharged.

This litigation arose as a result of allegations by Knoppers that compensation to which he was entitled was wrongfully withheld by the hospital. In accordance with the contract between the parties, the hospital paid Knoppers' malpractice insurance premiums. On March 29, 1985, the hospital paid a premium of $7,253 to the St. Paul Insurance Company for Knoppers' malpractice coverage for the period of January 1, 1985 to December 31, 1985.

At the time of Knoppers' discharge, the hospital deducted a total of $3,669 from two of his last paychecks. This amount represented the anticipated return premium for the period following Knoppers' termination to the policy termination date of December 31, 1985. The hospital attributes this deduction to its mistaken belief that the insurance company was technically required to pay the return premium to Knoppers.

The hospital was later informed by St. Paul that it would reimburse the unused portion of the premium in the sum of $3,669 directly to the hospital. St. Paul subsequently allowed the hospital to use the $3,669 as a credit to offset other amounts owed by the hospital to St. Paul. Although the hospital received this credit from St. Paul, it did not return to Knoppers the $3,669 it had deducted from his paychecks. Knoppers then filed a complaint pursuant to 26 M.R.S.A. § 626[2] and § 626-A[3] (Pamph.1986) claiming that the $3,669 had been wrongfully deducted from his paychecks and withheld.

The Superior Court found that Knoppers was an "employee" of the hospital within

dered in favor of the employee or employees shall include a reasonable rate of interest, an additional amount equal to twice the amount of those wages as liquidated damages and costs of suit, including a reasonable attorney's fee.

**2.** *See supra* note 1.

**3.** The Superior Court declined to assess a fine pursuant to 26 M.R.S.A. § 626-A because it concluded that this was not an available sanction in a private cause of action. This conclusion is not challenged on appeal.

the meaning of section 626, and that the hospital had wrongfully withheld from him the sum of $3,669. Accordingly, the court awarded Knoppers $3,669 plus 8% interest, $7,338 as liquidated damages, costs and reasonable attorney's fees. In a supplemental judgment the Superior Court specified that the plaintiff was entitled to $4,410 in attorney's fees and $771.67 in costs.

## II.

We approach the issue in this case by relying on the sound principle of statutory construction that absent a legislative definition, the term "employee" "must be given a meaning consistent with the overall statutory context, and be construed in the light of the subject matter, the purpose of the statute, the occasion and necessity for the law, and the consequences of a particular interpretation." *Town of Arundel v. Swain,* 374 A.2d 317, 321 (Me.1977) (quotations and citations omitted). *See Lakes Environmental Ass'n v. Town of Naples,* 486 A.2d 91, 95 (Me.1984). As Judge Learned Hand explained in *Helvering v. Gregory,* 69 F.2d 809, 810–11 (2d Cir.1934), *aff'd,* 293 U.S. 465, 55 S.Ct. 266, 79 L.Ed. 596 (1935), "the meaning of a [statute] may be more than that of the separate words, as a melody is more than the notes, and no degree of particularity can ever obviate recourse to the setting in which all appear, and which all collectively create."

The "setting" or context that sheds light on the meaning and intent of the term "employee" in section 626 is the legislative history and derivation of that section.

Section 626 derives from P.L.1911, ch. 39, "An Act to provide for the Weekly Payment of Wages." After some minor amendments, that act was codified in R.S. ch. 49, § 34 (1916) and again in R.S. ch. 30, § 50 (1954), which provided:

> **Sec. 50. Wages, time of payment; records; penalty.** Every corporation, person or partnership engaged in a manufacturing, mechanical, mining, quarrying, mercantile, restaurant, hotel, summer camp, beauty parlor, amusement, street railway, telegraph or telephone business; in any of the building trades; upon public works, or in the construction or repair of street railroads, roads, bridges, sewers, gas, water or electric light works, pipes or lines; every incorporated express company or water company; and every steam railroad company or corporation shall pay weekly each employee engaged in his or its business the wages earned by him to within 8 days of the date of such payment; *but any employee, leaving his or her employment, shall be paid in full on demand at the office of the employer where payrolls are kept and wages are paid,* and every county and city shall so pay every employee who is engaged in its business the wages or salary earned by him, unless such mechanic, workman, laborer or employee requests in writing to be paid in a different manner; and every town shall so pay each employee in its business if so required by him; but an employee who is absent from his regular place of labor at a time fixed for payment shall be paid thereafter on demand. A true record shall be kept showing the date and amount paid to each person engaged in any of the above occupations. There shall also be kept a daily record of the time worked by such person, excepting such employees as are paid a fixed weekly salary regardless of the number of hours worked, the same to be accessible at any reasonable hour to any representative of the department. The provisions of this section shall not apply to an employee engaged in cutting and hauling logs and lumber, nor the driving of same until it reaches its place of destination for sale or manufacture; nor to an employee of a cooperative corporation or association if he is a stockholder therein unless he requests such corporation to pay him weekly. No corporation, contractor, person or partnership shall by a special contract with an employee or by any other means exempt himself or itself from the provisions of this section. *Whoever violates any of the provisions of this section shall be punished by a fine of not less than $25, nor more than $50.* (Emphasis added).

The term employee as used in this statute is clearly defined in reference to the specified classes of employers.

In 1961, the Legislature deleted the provision of section 50 relating to the payment of employees leaving their employment, P.L.1961, ch. 417, § 86 and placed that provision in a new subsection, R.S. ch. 30, § 50-A, with its own penalty clause. P.L. 1961 ch. 95. Section 50-A provided as follows:

> **Section 50-A. Cessation of employment.** *Any employee, leaving his or her employment, shall be paid in full* within a reasonable time after demand *at the office of the employer where payrolls are kept and wages paid.* Whoever violates any of the provisions of this section shall be punished by a fine of not less than $25 nor more than $50.

R.S. ch. 30, § 50-A (Cum.Supp.1963) (emphasis added). In so doing the Legislature clearly did not intend a substantive change in the section 50-A definition of employee. The term "employee" was simply carried over, by derivation, from section 50, and continued to be defined in terms of the classes of employers specified therein.

The Legislature carefully delineated those employers that were and were not to be within the statutory scheme embodied by sections 50 and 50-A. Since hospitals were not included as "employers" under section 50, the hospital/physician employment relationship was clearly not one of the employer-employee relationships covered by either section 50 or section 50-A. The Legislature simply did not intend a salaried physician to be an employee, who at the time of cessation of employment could demand full payment "at the office of the employer where payrolls are kept and wages are paid," and thereby subject a hospital that was not in compliance to the criminal penalty provision of that statute.

This legislative intent to limit "employees" under section 50-A to those employed by the employers specified in section 50 carries through to the present statutory scheme, and for the same reason that a salaried physician would not fall within the provisions of section 50-A, Dr. Knoppers is excluded from section 626, the successor statute to section 50-A.

With the revision of the Maine statutes in 1964, section 50 was broken down into four separate sections, 26 M.R.S.A. §§ 621–624, and section 50-A was recodified as 26 M.R.S.A. § 626. Section 626 was subsequently repealed and replaced by P.L.1975, ch. 113, § 4 which, with certain amendments, constitutes the present statute now before us, namely, 26 M.R.S.A. § 626 (Pamph 1986). *See supra,* note 1. The new statute decriminalizes the employer's failure to pay wages to employees leaving their employment, and instead authorizes employees to bring civil actions for unpaid wages against delinquent employers.

■ Section 621, as set forth in the 1964 Maine Revised Statutes, delineated the specific classes of employers to whom the statute applied, as did its precursor statute, R.S. ch. 30, § 50 (Cum.Supp.1963). In 1983, the Legislature repealed section 621 and replaced it with a new statute containing two subsections. Subsection 621(1) is now essentially the same provision as the old section 621, and requires that weekly wages be paid by "certain employers."[4] The new subsection, 621(2), however, applies to "[a]ny employer, regardless of

---

**4.** Section 621(1) provides:

§ 621. Time of payment

1. Certain employers; weekly payment required. Every corporation, person or partnership engaged in a manufacturing, mechanical, mining, quarrying, mercantile, restaurant, hotel, summer camp, beauty parlor, amusement, telegraph or telephone business; in any of the building trades; in logging or lumbering operation; upon public works, or in the construction or repair of roads, bridges, sewers, gas, water, or electric light works, pipes or lines; every incorporated express company or water compa-ny; and every steam railroad company or corporation shall pay weekly each employee engaged in his or its business the wages earned by the employee to within 8 days of the date of that payment; every county and city shall so pay every employee who is engaged in its business the wages or salary earned by him, unless the employee requests in writing to be paid in a different manner. Every town shall so pay each employee in its business if so required by the employee. An employee who is absent from his regular place of employment at a time fixed for payment shall be paid thereafter on demand.

whether enumerated in subsection 1," and requires it to pay "its employee, on or before the employee's next regularly scheduled payday, the balance of the employee's earned hourly wages due to be paid which were not paid on the date normally scheduled for payment of those wages." 26 M.R.S.A. § 621(2) (Pamph.1986). Both subsections, however, apply only to employees heavily dependent upon weekly compensation to meet living expenses. The Legislature did not intend, for instance, that salaried corporate executives be treated as "employees" within the meaning of these subsections.

Given the historical derivation of section 626 in relation to that of sections 621–624, we conclude that the Legislature intended to limit "any employee" under section 626 to those employed by the employers specified in section 621(1) and its precursors, 26 M.R.S.A. § 621 (1974) and R.S. ch. 30, § 50 (Cum.Supp.1963). Since there is nothing in the current legislative scheme to suggest otherwise, we conclude that the contextual relationship between what is now section 626 and section 621(1) remains the same as that between their respective precursor statutes, R.S. ch. 30, § 50–A and § 50 (Cum.Supp.1963), in the original legislative scheme. Indeed, they derive from a common statute, P.L. 1911, ch. 39, that for 50 years limited, by its own terms, "any employee" to employees of only specific employers. After some minor amendments, those specified employers are now set forth in section 626(1).

In sum, "any employee" in section 626 was initially limited to those persons employed by the specific classes of employers set forth in R.S. ch. 30, § 50 (Cum.Supp. 1963) and, consistent with the original interrelationship between R.S. ch. 30, § 50

and § 50–A (Cum.Supp.1963), must now be limited to those employed by the "employers" specified in 621(1).[5]

The statutory scheme in which sections 626 and 621(1) retain an important interrelationship, was not designed to apply to the hospital/physician employment relationship at issue in this case. Properly read, in the context of its derivation and its historical relationship to sections 621–624, it is apparent that section 626 was intended to apply to working people who are dependent upon full and regular wage payments to meet their weekly needs. The Legislature did not intend to allow a salaried physician like Dr. Knoppers, who by written agreement is paid monthly, to invoke the double damages and attorneys' fees provisions of section 626. His problem, which is entirely distinct from that of typical wage-earners or local government employees similarly dependent upon weekly paychecks, can be resolved through an ordinary civil action for breach of contract. Since Dr. Knoppers is not an employee of one of the specific employers specified in section 621(1), he is not "any employee" under the provisions of section 626.[6]

For the reasons set forth above, the entry is:

Judgment vacated. Remanded to the Superior Court for entry of judgment in favor of the defendants.

McKUSICK, C.J., and ROBERTS and GLASSMAN, JJ. concurring.

NICHOLS, WATHEN, and CLIFFORD, Justices, dissenting.

We respectfully dissent.

---

5. The Legislature's enactment of section 621(2), which applies to "[a]ny employer, regardless of whether enumerated in subsection 1," does not warrant a conclusion that, by extrapolation, the Legislature intended section 626 to apply to any employer and, therefore, any employee, including Dr. Knoppers. Indeed, section 621(2), by its own terms, applies only to hourly wage-earning employees. A salaried physician who by written contract is paid monthly, like Dr. Knoppers, simply does not fit the category of "employee" contemplated by that section or any other sec-

tion of the Legislative scheme at issue in this case.

6. Moreover, as in R.S. ch. 30, § 50–A (Cum. Supp.1963), its precursor, section 626 continues to apply to employees who, after leaving their employment, request full payment from "the office of the employer where payrolls are kept and wages are paid." Dr. Knoppers is a salaried physician, not one whose earnings would be kept on a payroll or one who is paid a wage.

We are unable to agree with the Court's decision that the phrase "any employee" under section 626 is limited to those employed by an employer specified in section 621(1). The statutory exegesis offered by the Court is not to be found in the argument of either party. In our judgment the Court places too much emphasis upon a contextual relationship between statutes that are no longer in effect.

This appeal focuses upon whether the Superior Court erred in finding that this Plaintiff was an "employee" and that his withheld compensation constituted "wages" within the meaning of 26 M.R.S.A. § 626 (Pamph.1986).

In deciding which test to use to make this determination, the Superior Court rejected the common law "right to control" test, stating that application of this test to a physician would always lead to the conclusion that all physicians are independent contractors, regardless of the circumstances. The court concluded that in a particular case all relevant factors should be considered and that "the determination of employment status must be made on a realistic appraisal of the plaintiff's particular employment relationship with the entity to whom his services were provided." [1] In other words, mere reference to the statutory language tends to oversimplify a complex question.

In *Timberlake v. Frigon & Frigon, supra,* our Court declared that in cases where the determination of employment status is necessary to award worker's compensation benefits, "we [shall] defer to the Commission's expertise where it has applied the relevant legal criteria to the facts." *Id.* In the case now before us it was not a specialized administrative tribunal that determined the employment status; therefore, the reason for deference does not exist. Here, this issue may be appropriately treated as a question of law because we must first determine whether the appropriate test was applied and then whether the Superior Court correctly applied this legal principle to the facts. *See Interstate Industrial Uniform Rental Service v. Couri Pontiac,* 355 A.2d 913, 917 (Me.1976).

The legislative history of section 626 offers no guidance in defining "employee." [2] At common law a determination of employment status focused on whether the employer retained power of control or superintendence over the worker. This test was used in all cases requiring a determination of employment status, especially for purposes of determining vicarious liability and worker's compensation benefits. *See e.g. Timberlake v. Frigon & Frigon,* 438 A.2d 1294, 1296–1297 (Me.1982); *Lewiston Daily Sun v. Hanover Insurance Co.,* 407 A.2d 288 (Me.1979); *Poulette v. Herbert C. Haynes, Inc.,* 347 A.2d 596 (Me.1975).[3]

1. This is essentially the test we adopted in *Timberlake v. Frigon & Frigon,* 438 A.2d 1294 (Me. 1982) to define employee in the context of the Worker's Compensation Act. We specifically stated that the "right to control" test was inadequate in this "uniquely statutory field" and found that "such factors as the nature of the petitioner's work and its relation to the employer's business [have] special importance beyond the determination of the employer's right to control." *Id.* at 1297.

2. The provision permitting imposition of penalties, 26 M.R.S.A. § 626–A, and the requirement of section 626 that any judgment contain wages, liquidated damages, costs, and attorney's fees make this statute appear to be penal in nature. A law is penal, however, if the wrong sought to be redressed is a public wrong that violates public rights and duties and affects the whole community. *Michaud v. City of Bangor,* 160 Me. 285, 289, 203 A.2d 687, 690 (1964), *citing Huntington v. Attrill,* 146 U.S. 657, 13 S.Ct. 224,

36 L.Ed. 1123 (1892). This is not such a statute and therefore we are not bound to construe it strictly. *See State v. Lane,* 495 A.2d 773, 776 (Me.1985).

3. In *Murray's Case,* 130 Me. 181, 186, 154 A. 352, 354 (1931), we observed that the following factors might well be used in applying the "right to control" test:

(1) the existence of a contract for the performance by a person of a certain piece or kind of work at a fixed price; (2) independent nature of his business or his distinct calling; (3) his employment of assistants with the right to supervise their activities; (4) his obligation to furnish necessary tools, supplies and materials; (5) his right to control the progress of the work except as to final results; (6) the time for which the workman is employed; (7) the method of payment, whether by time or by job; (8) whether the work is part of the regular business of the employer.

Essentially, an independent contractor is one who conducts an independent business and does not work under the direction or control of another, but rather determines himself the manner in which the work should be done. An independent contractor typically uses his own tools and equipment, is compensated by the task and is not bound to follow the instructions of the employer. If an independent contractor breaches his contract, a cause of action accrues. Conversely, an employee typically uses the employer's tools and equipment. His compensation is measured by time or piece, and he must follow the employer's instructions. An employee can end the employment contract at any time without regard to the final results of the work. *Murray's Case*, 130 Me. at 184–187, 154 A. at 353–355.

The Superior Court employed the "economic reality" test, and in our view it correctly determined that the Plaintiff was an employee within the meaning of section 626. Moreover, application of the common law "right to control" test leads to the same conclusion.

The Defendant Hospital maintained much control over the Plaintiff physician. He was required to render services in accordance with Hospital rules and regulations. He was not allowed to see private patients in the Hospital or to have a medical practice in the Rumford area. The patients paid the Hospital for the physician's services and the Hospital in turn paid him a fixed salary. The Hospital also allowed the Plaintiff vacation and sick time, and provided him with medical, malpractice and life insurance. The Hospital provided the Plaintiff with all the necessary personnel and facilities. Either party could terminate the contract with notice.

The Plaintiff correctly points out that he exercised independence on decisions requiring medical judgment. This, of course, is true of most professionals who have been trained to provide specialized services and does not necessitate a finding that the person is an independent contractor. The Plaintiff also took responsibility for his own tax withholding obligations and retirement plan, but neither are such factors determinative. *See e.g. Timberlake v. Frigon & Frigon*, 438 A.2d 1294, 1298 (Me. 1982); *Murray's Case*, 130 Me. at 186; 154 A. at 354. What is much more significant is that the Plaintiff used the Defendant's equipment, was paid for a forty-hour work week, received employee's benefits and was required to follow the Hospital's rules and regulations. The Plaintiff could terminate the contract without incurring any personal liability.

The circumstance that the Plaintiff was a salaried person does not alter the fact that the Defendant Hospital essentially had the right to control the Plaintiff physician. If the Legislature had intended to exclude a highly paid or salaried professional from the ambit of section 626 it could have easily done so by defining "employee" to exclude such untypical professionals. It did not do so.

In sum, we are left to apply the common law "right to control" test to determine employment status. Although the Superior Court relied upon an "economic reality" test instead of using the common law "right to control" test, we find that its conclusion was the correct one. The Plaintiff physician was, we submit, an employee within the meaning of section 626. Furthermore, the Superior Court correctly concluded that the sums withheld by the Hospital from his salary constituted wages within the meaning of section 626.

We would affirm the judgment below.

