**Daniel BECKWITH, Plaintiff,**

v.

**UNITED PARCEL SERVICE, Defendant.**

**Civ. No. 87–0367 P.**

United States District Court, D. Maine.

Dec. 30, 1988.

James B. Haines, Jr., Lisa M. Raymond, Black Lambert Coffin & Haines, Portland, Me., for plaintiff.

Margaret Coughlin LePage, Charles S. Einsiedler, Jr., Pierce Atwood Scribner, Portland, Me., for defendant.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

### I. FACTUAL BACKGROUND

The following facts are undisputed except as specifically indicated. In April, 1986, Plaintiff was a driver for United Parcel Service, Inc. ("UPS"), working out of the Bangor, Maine Center. Plaintiff was a member of a bargaining unit represented by Local # 340 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("the Union").

On April 2, 1986, a meeting took place at the Bangor Center to discuss problems with Plaintiff's work performance. Present at the meeting were the Plaintiff; Carl Casperson, Bangor Center Manager; Michael Danforth, Plaintiff's immediate supervisor; Roy Chicone, North Maine Division Manager; and Willie Poisson, Union steward. Discussed at this meeting were three incidents in which Plaintiff allegedly had released UPS packages to incorrect consignees in violation of UPS delivery procedures. These misdeliveries involved computer and other equipment alleged to be in excess of $9000 in value.[1] This meeting concluded with Plaintiff being informed that he was being terminated for gross negligence.

After being told he was terminated, Plaintiff offered to pay back the losses suffered by the misdeliveries if he could have his job back. Mr. Poisson, Union steward, left the meeting in order to meet privately with the Plaintiff. Mr. Poisson and Plaintiff telephoned Robert Piccone, Union President, for consultation. The substance of this telephone conversation is unclear on the present record. Defendant

---

1. The facts presently before the Court neither specify the items that were allegedly misdelivered nor describe how the alleged value of the items was determined. The facts are also unclear as to whether or not the alleged misdeliveries resulted in an actual loss to UPS.

claims that Mr. Piccone advised Mr. Poisson and the Plaintiff that, under state law, UPS could not ask Plaintiff to pay back the losses caused by the misdeliveries, but that UPS could terminate Plaintiff under the collective bargaining agreement. Plaintiff disputes the contention that Mr. Piccone advised him and Mr. Poisson of Plaintiff's state law rights.

After the telephone call, Plaintiff and Mr. Poisson returned to the room with the UPS managers and announced that Plaintiff wished to offer to pay UPS for the lost equipment in return for reinstatement. It was agreed by all present that Plaintiff would be reinstated with a one day suspension and a warning letter placed in his file. In return, Plaintiff would reimburse UPS for $7814.00, the value of the misdelivered computer equipment at a rate of $50.00 per week.[2]

The first deduction of $50.00 from Plaintiff's paycheck occurred on April 5, 1986. To November 19, 1987, the date of the complaint,[3] UPS had withheld approximately $4000.00. Neither Plaintiff nor the Union has attempted to invoke or exhaust the grievance procedures of the collective bargaining agreement.[4] Plaintiff now claims that Defendant's actions in withholding weekly sums from Plaintiff's pay violate 26 M.R.S.A. § 629. Plaintiff claims that, un-

der 26 M.R.S.A. § 626–A, he is entitled to recover unpaid wages, interest, an additional amount equal to twice the amount of such unpaid wages, costs of suit, and attorneys' fees. Accordingly, Plaintiff demands judgment in the amount of $12,000.00 and attorney's fees.

Defendant now moves for summary judgment on the basis that the state statute underlying Plaintiff's claim is preempted by federal labor law. Additionally, Defendant claims that the collective bargaining agreement controls how wages may be deducted from union members' paychecks,[5] and therefore Plaintiff, as a party to the collective bargaining agreement, waives his rights under 26 M.R.S.A. § 629. In the alternative, Defendant argues that Plaintiff's request for treble damages, interest and attorneys' fees under 26 M.R.S.A. § 626–A does not apply to actions brought under § 629. The Court treats the latter argument as a motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## II.  ANALYSIS

### A.  *Federal Preemption of Labor Law: The Garmon Rule*

It is well established that Congress has broad power to legislate in the labor law

---

2. The agreement signed by Plaintiff is a pretyped form from the Loss Prevention Department, North New England District, with information specific to the instant case filled in where appropriate. The agreement as completed provides in pertinent part:

> I, Daniel Beckwith, an employee of United Parcel Service, hereby admit that I driver released three delivery stops to the wrong consignee, and I hereby assume responsibility for the loss from this improper act. I agree to reimburse United Parcel Service, Inc. for this loss by weekly payrol [sic] deductions in the amount of $50.00 per week totalling $7814.00. I further understand that a repetition of this improper act can lead to the termination of my employment and that a warning letter shall be issued.

3. This action was originally filed on November 19, 1987 in the Superior Court of Maine for Cumberland County as Docket Number CV–87–1234. This Court assumed full jurisdiction upon Defendant's petition for removal filed on December 21, 1987, pursuant to 28 U.S.C. § 1441.

4. The Defendant, by pleading of its Fourth Affirmative Defense, has generated the issue of whether Plaintiff may maintain this action without invoking grievance procedures as outlined in the collective bargaining agreement. This defense is not brought forward in argument on this motion. Accordingly, the Court does not address it decisionally, and proceeds to the resolution of the pending motion on the assumption that Plaintiff is not precluded in the assertion of the claim by failure to exhaust collective bargaining remedies.

5. The collective bargaining agreement covering Plaintiff's employment provides as follows:

> ARTICLE 10—LOSS OR DAMAGE
> Section 1
> Employees shall not be charged for loss or damage unless clear proof of gross negligence is shown.
> This Article is not to be construed as permitting charges for loss or damage to equipment under any circumstances.
> No deduction of any kind shall be made without a hearing with the Local Union.

area and thus preempt overlapping state law. *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 208, 105 S.Ct. 1904, 1909, 85 L.Ed. 2d 206 (1985). Congress, however, has never exercised its authority to occupy the entire labor law field, and the extent to which the laws of individual states are displaced by a single, uniform, national rule has been a matter of frequent and recurring concern. *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 241, 79 S.Ct. 773, 777, 3 L.Ed.2d 775 (1959). While it is clear that the National Labor Relations Act, 29 U.S.C. § 151 *et seq.*, leaves much to the states, "Congress has refrained from telling us how much." *Id.* at 240, 79 S.Ct. at 777, *citing Weber v. Anheuser–Busch, Inc.*, 348 U.S. 468, 480–81, 75 S.Ct. 480, 487–88, 99 L.Ed. 546 (1955) *citing Garner v. Teamsters Union*, 346 U.S. 485, at 488, 74 S.Ct. 161 at 164, 98 L.Ed. 228 (1953). Accordingly, as the Supreme Court observed, "[t]he penumbral area can be rendered progressively clear only by the course of litigation." *San Diego Building Trades Council v. Garmon*, 359 U.S. at 240, 79 S.Ct. at 777, *citing Weber v. Anheuser–Busch, Inc.*, 348 U.S. at 480–81, 75 S.Ct. at 487–88. The case now before this Court requires illumination of one more dark corner of the penumbra.

Plaintiff claims that Defendant UPS violated 26 M.R.S.A. § 629 [6] by making weekly deductions from Plaintiff's paycheck, as mutually agreed in writing by Plaintiff, Defendant and Plaintiff's Union representative, in order to recoup losses caused by Plaintiff's misdelivery of a UPS package. In its memorandum in support of its motion for summary judgment, Defendant argues that under the so-called *Garmon* rule, established in *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct.

773, 3 L.Ed.2d 775 (1959), states may not regulate activity that the National Labor Relations Act (NLRA) protects, prohibits, or arguably protects or prohibits. Defendant points to sections 7 and 8 of the NLRA, 29 U.S.C. §§ 157 and 158(d), which grant employees the right to bargain and obligate employers and employees to bargain collectively "with respect to wages, hours, and other terms and conditions of employment" and to incorporate their understanding into a written agreement. Defendant argues that 26 M.R.S.A. § 629 prohibits one type of agreement relating to "wages, hours and other terms of employment," thus preventing the parties from bargaining freely, and is therefore preempted by the NLRA under the *Garmon* rule of preemption.

■ The flaw in Defendant's analysis is that it assumes an overly broad scope for the *Garmon* rule. It is true that under the *Garmon* rule, state legislation *vis-a-vis* activities meant to be regulated exclusively by the NLRA is preempted. There are, however, limits to the scope of activities included within the NLRA ambit. While acknowledging the exclusive federal role in regulating the collective bargaining process, the Supreme Court has made clear that federal law has not preempted all aspects of the employer-employee relationship. In *Metropolitan Life Insurance Co. v. Massachusetts*, 471 U.S. 724, 754–55, 105 S.Ct. 2380, 2397, 85 L.Ed.2d 728 (1985), the Supreme Court explained that, in enacting the NLRA,

the evil Congress was addressing ... was entirely unrelated to local or federal regulation establishing minimum terms of employment.... No incompatibility exists ... between federal rules designed to restore the equality of bargaining power, and state or federal legislation

---

**6.** 26 M.R.S.A. § 629 states in pertinent part: No person, firm or corporation shall require or permit any person as a condition of securing or retaining employment to work without monetary compensation or when having an agreement, verbal, written or implied that a part of such compensation should be returned to the person, firm or corporation for any reason other than for the payment of a loan, debt or advance made to the person.... For purposes of this subchapter, the word "debt"

means a benefit to the employee. Debt does not include items incurred by the employee in the course of the employee's work or dealing with the customer on his employer's behalf, such as cash shortages, inventory shortages, dishonored checks, dishonored credit cards, damages to the employer's property in any form or any merchandise purchased by a customer.... An employer shall be liable to the employees for the amount returned to the employer as prohibited in this section.

that imposes minimal substantive requirements on contract terms negotiated between parties to labor agreements.... *Metropolitan Life Insurance Co.* holds that federal labor law preemption under the NLRA does not extend to state statutes that establish minimum standards of employment. 471 U.S. at 754–55, 105 S.Ct. at 2396–97. Because the *Garmon* rule calls for federal preemption only in areas meant to be controlled exclusively by the NLRA, the rule does not apply to state statutes establishing minimum standards of employment that fall outside the area of NLRA exclusivity.

■ The question, then, for this Court to determine is whether 26 M.R.S.A. § 629 establishes a minimum standard of employment and thus avoids preemption under the *Garmon* rule. In *Metropolitan Life Insurance Co.*, the United States Supreme Court considered a Massachusetts statute requiring coverage for specified minimum mental-health care benefits under a general insurance policy, an accident or sickness insurance policy, or an employee health-care plan that covers hospital or surgical expenses. *Metropolitan Life Ins.*, 471 U.S. at 727, 105 S.Ct. at 2382. The pertinent question thus presented was whether the statute, as applied to insurance policies purchased pursuant to negotiated collective bargaining agreements regulated by the NLRA, was preempted by the labor Act. *Id.*

The Court likened the Massachusetts statute to other minimal labor standards that fall under the states' broad police power authority in the labor area:

States possess broad authority under the police powers to regulate the employment relationship to protect workers within the State. Child labor laws, minimum and other wage laws, laws affecting occupational health and safety ... are only a few examples. *De Canas v. Bica,* 424 U.S. 351, 356 [96 S.Ct. 933, 936, 47 L.Ed.2d 43] (1976). State laws requiring that employers contribute to unemployment and workmen's compensation funds, laws prescribing mandatory state holidays, and those dictating payment to employees for time spent at the polls or on jury duty all have withstood scrutiny. 471 U.S. at 756, 105 S.Ct. at 2398. These standards remain valid, unaffected by federal preemption, because they do not interfere with that area of labor law which is properly under the NLRA umbrella. *Id.* Similarly, although it limited the employee's options in choosing employment conditions, the Massachusetts statute did not limit the rights of self-organization or collective bargaining protected by the NLRA. *Id.* at 758, 105 S.Ct. at 2398. The Massachusetts statute affected union and nonunion employees equally, neither encouraged nor discouraged the collective bargaining processes, and had only an indirect effect on the rights of self-organization established in the NLRA. Id. at 755, 105 S.Ct. at 2397. Because it did not affect the areas reserved to the NLRA, the Court found that the statute was a minimal labor standard that was not preempted by the federal statute.

Coincidentally, the United States Supreme Court has more recently considered whether another Maine statute is preempted by federal labor law. In *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987), the Court held that the NLRA does not preempt a Maine statute that required employers to provide a one-time severance payment to employees in the event of a plant closing. Drawing heavily from its analysis in *Metropolitan Life Insurance Co., supra,* the Court found that "the Maine law is not preempted by the NLRA, since it establishes a minimum labor standard that does not intrude upon the collective bargaining process." 482 U.S. at —, 107 S.Ct. at 2215, 96 L.Ed.2d at 8. In *Fort Halifax Co.,* the Court explained that the Maine statute was a local regulation that, like the Massachusetts statute in *Metropolitan Life Insurance Co.,* provided protection to individual union and nonunion workers alike and does not affect the collective bargaining processes to which the NLRA is addressed. *Id.* at —, 107 S.Ct. at 2222, 96 L.Ed.2d at 17.

The Maine statute under consideration in the instant case, like the statutes considered in *Metropolitan Life Insurance Co. v. Massachusetts* and *Fort Halifax Packing Co. v. Coyne, supra*, establishes a minimum labor standard that does not interfere with the legislative purpose implemented by NLRA. It does not limit the employee's right of self-organization, does not inhibit or restrict the right of collective bargaining as protected under the federal Act, and treats union and nonunion employees equally. Rather, the statute addresses a substantive area of labor law that falls outside the federal Act.

> The NLRA is concerned primarily with establishing an equitable process for determining terms and conditions of employment, and not with particular substantive terms of the bargaining when the parties are negotiating from relatively equal positions.

*Metropolitan Life Ins.*, 471 U.S. at 753, 105 S.Ct. at 2396. The Maine statute, 26 M.R.S.A. § 629, is clearly substantive in nature and outside the NLRA concern of establishing an equitable collective bargaining process. Accordingly, the statute is not preempted by the federal labor Act under the *Garmon* rule.[7]

**7.** Defendant argues that this case is controlled by *Teamsters v. Oliver*, 358 U.S. 283, 79 S.Ct. 297, 3 L.Ed.2d 312 (1959). In *Oliver*, a collective bargaining agreement establishing a wage scale for truckdrivers provided for an additional stated minimum rental for those truckdrivers who owned and used their own vehicles. An Ohio court invalidated this provision under an Ohio antitrust law. *Id.* at 289, 79 S.Ct. at 301. The Supreme Court reversed, holding that federal labor law preempted the state antitrust statute.

*Oliver* is, however, distinguishable from the case at bar. In that case, the antitrust law directly affected the parties and their respective positions *in the collective bargaining process*, limiting the positions the parties could assume in the give-and-take on the substantive issues in the collective bargaining negotiations. *Id.* at 296, 79 S.Ct. at 304; *see Massachusetts Nurses Association v. Dukakis*, 726 F.2d 41, 43 (1st Cir.1984) ("[in *Oliver*, the state] acted to proscribe activities which, though left unregulated by federal law, directly affected the balance of power between the *participants in the bargaining process*") (emphasis supplied). Thus, the *Oliver* Court struck the Ohio antitrust statute

**B.** *Waiver of rights under 26 M.R.S.A. § 629*

Defendant claims that Plaintiff, as a party to the collective bargaining agreement, waived his rights under 26 M.R.S.A. § 629.[8] As Defendant points out, the collective bargaining agreement specifies that employees shall not be charged for loss or damage unless clear proof of gross negligence is shown. It is argued that by accepting these provisions in the collective bargaining agreement, the Union membership waived its protection under the state statute. Accordingly, Defendant claims that Plaintiff is limited to the rights afforded him under the collective bargaining agreement. The error in Defendant's argument is that he fails to address whether or not Plaintiff's rights under 26 M.R.S.A. § 629 may be contractually waived at all.

It is true that generally, employers and unions can bargain away statutorily protected rights to collective activity, such as the right to strike. *Mastro Plastics Corp. v. NLRB*, 350 U.S. 270, 76 S.Ct. 349, 100 L.Ed. 309 (1956). It is also true, however, that certain statutory rights of employees, unrelated to protected collective activity, cannot be waived contractually at

because it interfered with the process of collective bargaining, a process which is clearly protected under the NLRA.

**8.** This argument was raised for the first time in Defendant's reply brief in support of its motion for summary judgment. In its reply brief, Defendant withdrew its alternative summary judgment argument that § 301 of the L.M.R.A. preempts 26 M.R.S.A. § 629, in light of the recent United States Supreme Court opinion in *Lingle v. Norge Division of Magic Chef, Inc.*, —— U.S. ——, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). Footnote 9 in *Lingle* apparently alerted Defendant to this argument of waiver. Defendant cites this footnote, in which the Court states that "[w]hether a union may waive its members' individual, nonpre-empted state-law rights, is, likewise, a question distinct from that of whether a claim is pre-empted under § 301, and is another issue we need not resolve today." Defendant offers no other authority for its waiver argument. As this issue was raised first in a reply to his memorandum in opposition to the motion for summary judgment, Plaintiff has not addressed whether this issue has been properly raised on the pleadings in this case. It is in this context that the Court analyzes this issue.

all. In *Alexander v. Gardner–Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), the United States Supreme Court prohibited a union from waiving an individual member's cause of action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* The *Alexander* Court acknowledged that those rights conferred upon employees that relate to collective activity, such as the right to strike, may be waived under a collective bargaining agreement. *Id.* at 51, 94 S.Ct. at 1021. The Court explained that "[t]hese rights are conferred on employees collectively to foster the processes of bargaining and properly may be exercised or relinquished by the union as collective bargaining agent to obtain economic benefits for unit members." *Id.* The Court contrasted such rights with those that protect individual rights, such as the right to equal employment opportunities protected under Title VII. *Id.* These rights, the Court said, "are not susceptible of prospective waiver." *Id.* at 51–52, 94 S.Ct. at 1021.

Similarly, in *Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), the Supreme Court addressed whether wage rate protections afforded under the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. (FLSA), could be waived by a collective bargaining agreement's dispute resolution procedures. In *Barrentine*, the employees were truckdrivers who were seeking to be paid for conducting pretrip safety inspections required by the employer. The employees' union submitted the wage claim to a joint grievance committee pursuant to the collective bargaining contract, where their claim was rejected. The employees then sued in federal district court under FLSA. Reversing the Court of Appeals for the Eighth Circuit, the Supreme Court held that the FLSA wage claims were not waived by the prior submission of their grievances to the contractual dispute resolution procedures. 450 U.S. at 734, 101 S.Ct. at 1441.

Relying upon its opinion in *Alexander v. Gardner–Denver Co.*, *supra*, the Court reasoned that, while judicial deference is due where the rights asserted arise out of a collective bargaining agreement, "different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers." 450 U.S. at 737, 101 S.Ct. at 1443. The Court cited the goals of the FLSA, which was designed to give specific minimum protections to individual workers and to ensure that each employee covered by the Act would receive "[a] fair day's pay for a fair day's work." 450 U.S. at 739, 101 S.Ct. at 1444, *citing Overnight Motor Transportation Co. v. Missel*, 316 U.S. 572, 578, 62 S.Ct. 1216, 1220, 86 L.Ed. 1682 (1942), *quoting* 81 Cong.Rec. 4983 (1937) (message of President Roosevelt). Thus, Title VII of the Civil Rights Act of 1964 and the FLSA both create minimal labor standards of protection that cannot be waived by collective bargaining agreement.

The Supreme Court's reasoning in *Alexander* and *Barrentine* would appear to apply with equal force whether the asserted individual right derives from federal or state statutory authority. As discussed *supra*, states are free to create and apply minimal labor standards, free from preemption under the NLRA. Statutes such as 26 M.R.S.A. § 629 survive federal preemption because they establish minimal standards of protection for individual employees and do not affect the collective bargaining process protected by the NLRA. This reasoning is consistent with the Supreme Court's reasoning in *Alexander* and *Barrentine*, *supra*, that proscribes waiver of certain statutorily created minimal, individual employee rights that do not affect collective activity. As the Court of Appeals for the Seventh Circuit noted in *United States Equal Employment Opportunity Commission v. County of Calumet*, 686 F.2d 1249, 1255 n. 4 (1982):

Congress and state legislatures have imposed a number of terms and conditions on private industry to regulate the employment relationship and the operation of the workplace ... which apply to a particular industry or class of employees, and a wide variety of state tort and worker's compensation laws [citations

omitted]. These statutes often represent the minimum standards under which employees may labor in this society and generally may not be altered in a collective bargaining agreement.

Thus, state statutes such as 26 M.R.S.A. § 629 that create minimum labor protection standards without affecting collective activity are nonwaivable in a collective bargaining agreement.

### C. *Recovery of Damages For Violation of 26 M.R.S.A. § 629*

▇ Pursuant to 26 M.R.S.A. § 626–A,[9] Plaintiff requests damages consisting of unpaid wages, interest, an additional amount equal to twice the amount of such unpaid wages, costs of suit, and attorney's fees. Without conceding that the Plaintiff's statutory claim is neither preempted nor waived, Defendant makes an alternative motion for partial summary judgment, claiming that 26 M.R.S.A. § 629 specifies an exclusive remedy for a violation of its provisions and that the penalty provisions in 26 M.R.S.A. § 626–A do not apply. Having reviewed the language in sections 626–A and 629, this Court finds that, with the exception of the specific reference in its first paragraph forfeiture provision, 26 M.R.S.A. § 626–A is not applicable to violations of 26 M.R.S.A. § 629.

The third paragraph of section 629 provides in its entirety: "An employer shall be liable to the employees for the amount returned to the employer as prohibited in this section." This language establishes the remedy to be applied under section 629, which is that the employer must return those funds it obtained from the employee in violation of the statute.[10]

Plaintiff argues that, in addition to the remedy provided within section 629, the penalty provisions under section 626–A should be applied as well. It is clear that by its express terms, the first paragraph of section 626–A, calling for a forfeiture of not less than $100 nor more than $500 for each violation, applies to section 629. It is less clear, however, why the second paragraph of section 626–A, which includes the additional damages demanded by Plaintiff, is intended to also apply to violations of section 629.

From the mention of section 629 in the first paragraph of section 626–A, Plaintiff concludes that the second paragraph of section 626–A applies as well to provide a remedy for violations of section 629. This contention, however, is inconsistent with another important reference contained in section 626–A.

The first paragraph forfeiture provision of section 626–A, which mentions section 629 and thereby gives rise to Plaintiff's contention, also mentions, *inter alia*, section 626. Section 626 establishes standards for payment of earned wages to employees who are leaving their jobs. By amendment, in 1983 the Maine Legislature added to section 626 a penalty provision that closely parallels the penalty provision embodied in the second paragraph of section 626–A. The section 626 penalty provision provides in pertinent part:

> An employer found in violation of this section shall be liable for the amount of unpaid wages and, in addition, the judgment rendered in favor of the employee or employees shall include a reasonable rate of interest, an additional amount equal to twice the amount of those wages as liquidated damages and costs of suit, including a reasonable attorney's fee.

**9.** 26 M.R.S.A. § 626–A provides in pertinent part:

> Whoever violates any of the provisions of sections 621 to 623 or section 626, 628 or 629 shall be subject to a forfeiture of not less than $100 nor more than $500 for each violation.
>
> Any employer shall be liable to the employee or employees for the amount of unpaid wages. Upon a judgment being rendered in favor of any employee or employees, in any action brought to recover unpaid wages under

this subchapter, such judgment shall include, in addition to the unpaid wages adjudged to be due, a reasonable rate of interest, an additional amount equal to twice the amount of such wages as liquidated damages, and costs of suit including a reasonable attorney's fee. . . .

**10.** The Maine legislature added this remedy to the statute by amendment in 1981. 1981 Me. Laws 285.

Thus, damages specifically available under section 626 narrowly parallel the damages available under the second paragraph of section 626–A.

The question that Plaintiff's contention leaves unanswered is, why did the legislature think it necessary to add this specific penalty provision to section 626 *if section 626–A already provided the intended penalty?* According to Plaintiff's argument, the inclusion of section 629 in the first paragraph forfeiture provision means that all of section 626–A applies. However, section 626 is also included in the first paragraph forfeiture provision. Yet in 1983 the legislature felt it necessary to amend section 626 to include therein provision for the same penalty already included, on Plaintiff's theory, in section 626–A. 1983 Me. Laws 652.

Obviously, the legislature did not intend the penalty provision of the second paragraph of section 626–A to apply to the violation described in those sections specifically referenced in the first paragraph forfeiture provision of section 626–A. By amending section 626 to include a penalty provision parallel to that in the second paragraph of 626–A, the legislature made it clear that the 626–A's second paragraph penalty provision did not apply of its own force to section 626. Absent a similar amendment to 629, the conclusion is that the legislature does not intend this remedy to be available under section 629, especially in view of the fact that section 629, by its own terms, specifically provides a more limited remedy than that provided in section 626–A.

This analysis is supported by the language used in each of sections 626–A and 629. Section 629 clearly contemplates, *inter alia,* a scenario in which compensation *paid* to the employee is *returned* to the employer, as a condition of employment, for a reason other than payment of a "debt" as defined in the third paragraph. In contrast, the second paragraph of section 626–A simply addresses unpaid wages. This Court does not agree with Plaintiff's contention that this is a simple matter of semantics. There is a substantive difference between an employer failing to compensate an employee, and an employer who requires an employee to pay the employer out of earned wages in order to retain his or her job. Had the legislature intended to include the section 629 scenario in the section 626–A penalty scheme, it would have phrased the second paragraph penalty provision to include the return to the employer of paid wages as addressed in section 629.

Accordingly, it is ORDERED that Defendant's motion for summary judgment on the issue of federal labor law preemption be, and it is hereby, DENIED. It is further ORDERED that Defendant's motion for summary judgment on the issue of waiver of Plaintiff's statutory rights by virtue of the collective bargaining agreement be, and it is hereby, DENIED. Finally, it is ORDERED that Defendant's motion for partial summary judgment on the issue of the availability of damages under 26 M.R.S.A. § 626–A be, and it is hereby, GRANTED.