See also, D.C., 703 F.Supp 138.

**Daniel BECKWITH, Plaintiff,**

v.

**UNITED PARCEL SERVICE,
Defendant.**

**Civ. No. 87–0367–P.**

United States District Court,
D. Maine.

April 20, 1989.

James B. Haines, Jr., Lisa M. Raymond, Black Lambert Coffin & Haines, Portland, Me., for plaintiff.

Charles S. Einsiedler, Jr., Margaret Coughlin LePage, Pierce Atwood Scribner, Portland, Me., for defendant.

## MEMORANDUM OF DECISION AND ORDER

GENE CARTER, District Judge.

## I. INTRODUCTION

Plaintiff Daniel Beckwith brings this action against his employer, Defendant United Parcel Service ("UPS"), seeking damages for an allegedly unlawful employment practice in violation of 26 M.R.S.A. section 629. Initially brought in the Maine Superior Court for Cumberland County, Defendant's petition for removal to this Court was granted pursuant to 28 U.S.C. section 1441(a). Jurisdiction in this Court is based on diversity of citizenship, 28 U.S.C. section 1332. The parties have agreed to trial entirely by stipulated record in lieu of live testimony and evidentiary submissions.

## II. STIPULATED RECORD

The Joint Stipulated Record, submitted to this Court on January 31, 1989, states the stipulated facts as follows.

1. Plaintiff Daniel Beckwith works currently as a driver out of the UPS center located in South Portland, Maine. During all times relevant to the action now before the Court, Plaintiff worked for UPS as a driver out of the UPS center located in Bangor, Maine.

2. While working for UPS in Bangor, Plaintiff was a member of a bargaining unit represented by Local # 340 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (the "Union"). A collective bargaining agreement between the Union and UPS governed the terms and conditions of Plaintiff's employment.[1]

3. On April 2, 1986, a meeting among Plaintiff, Plaintiff's Union representative, and UPS management was called to discuss Plaintiff's driver release problems. In attendance at that meeting were Plaintiff; his Union representative, Willie E. Poisson; Plaintiff's immediate supervisor, Michael Danforth; UPS Center Manager Carl Casperson; and Mr. Casperson's supervisor, Roy Chicoine.

4. On numerous instances prior to April 2, 1986, Plaintiff had driver released packages in violation of UPS delivery policies. Of particular concern to UPS at this meeting were recent misdeliveries of approximately $8,000 worth of computer equipment and approximately $1,400 worth of other assorted parcels, including video equipment. This merchandise was never recovered by UPS or by its intended recipients. Prior to this meeting, Plaintiff had received oral and written warnings regarding other performance problems.[2]

5. Plaintiff's Union representative, Mr. Poisson, believed that Plaintiff's driver release problems constituted gross negligence under the collective bargaining agreement in effect between UPS and the Union, and that UPS had the right to terminate Plaintiff under that agreement for the infractions.

6. After a lengthy discussion of Plaintiff's driver release problems, Plaintiff was terminated by Mr. Casperson. Plaintiff offered to pay back the losses if he could keep his job. At that point, Mr. Poisson cut off the discussion because he wanted to discuss the situation in private with Plaintiff and to make a telephone call to the local president of the Union, Robert Piccone.

7. After Mr. Poisson explained Plaintiff's situation to Mr. Piccone, Mr. Piccone advised Mr. Poisson that, under state law, UPS could not ask Plaintiff to pay back the losses but could terminate him under the

---

1. The parties attached a copy of the collective bargaining agreement, marked as Exhibit A to the Stipulated Record. The terms and conditions of Plaintiff's employment were governed by both the National Master United Parcel Service Agreement, pages 1–42 of Exhibit A to the Stipulated Record, which covers "operations in, between and over all of the states, territories, and possessions of the United States and operations into and out of all contiguous territory,"

and the United Parcel Service New England Supplement, pages 45–110 of Exhibit A, which covers certain classifications of UPS employees in the jurisdiction of specified locals, including Local # 340.

2. The parties attached copies of the written warnings as Exhibits B through E to the Stipulated Record.

collective bargaining agreement. Mr. Piccone would testify that he was aware of 26 M.R.S.A. § 629, that he believed payroll deductions would violate the statute but that he believed Plaintiff's only alternative was termination because he would not be successful in arbitration. Mr. Piccone explained the options to Mr. Poisson, but did not recommend either option.[3]

8. Mr. Poisson would testify that he, in turn, explained to Plaintiff what Mr. Piccone had said about the existence of the state law and the alternative of termination.

9. Plaintiff would testify that he was not specifically advised of the provisions of state law, including unfair employment practices statutes, that prohibited wage deductions from losses such as those resulting from misdelivered goods.

10. Plaintiff informed Mr. Poisson that he wanted to offer to pay back the losses if UPS would reinstate him.

11. Plaintiff and Mr. Poisson returned to the meeting with the UPS supervisors, made such an offer, and negotiated the amount to be withheld from Plaintiff's paychecks. During these negotiations, Mr. Poisson convinced the UPS officials to agree that Plaintiff be required to pay only for the computer equipment, valued at $7,814, through weekly payroll deductions of $50 and that UPS forgive the other losses. It was also agreed that Plaintiff's termination would be converted to a one-day suspension and a written warning. The agreement was reduced to writing and was signed by Plaintiff, Mr. Poisson, and Mr. Casperson.[4]

12. The payroll deduction agreement was executed in accordance with Article 10, Section 1 of the National Master United Parcel Service Agreement, which states:

---

**3.** There is a dispute of fact between the parties as to what Plaintiff was told during his conversation with his union representative, Mr. Poisson. The essence of the dispute is related in Paragraphs 8 and 9, *infra.*

The parties submit that this dispute is not material to the resolution of the legal issues remaining to be decided by the Court, but state that they stand ready to put on testimony regarding this issue if necessary. The Court

ARTICLE 10—LOSS OR DAMAGE

Section 1

Employees shall not be charged for loss or damage unless clear proof of gross negligence be shown.

This Article is not construed as permitting charges for loss or damage to equipment under any circumstances.

No deduction of any kind shall be made without a hearing with the Local Union.

13. In accordance with the agreement signed April 2, 1986, weekly payroll deductions from Plaintiff's paychecks began on or about April 5, 1986. Payroll deductions continued through December 7, 1987. The total amount deducted from Plaintiff's payroll to date is $4,300. After having first advised UPS in writing of his belief that the deduction agreement violated state law, Plaintiff filed suit.

14. At no time has Plaintiff or Plaintiff's Union attempted to invoke the grievance procedures of the collective bargaining agreement with respect to Plaintiff's discipline or any dispute concerning the April 2, 1986 agreement to withhold from his paychecks.

## III. ANALYSIS

In its Report of Final Pretrial Conference and Order, the Court reported that the sole issues to be resolved at trial are as follows:

(a) whether Plaintiff is entitled to relief under 26 M.R.S.A. section 629;

(b) whether Plaintiff is barred from recovering on his claim because of his failure to exhaust his contractual remedy (the grievance and arbitration procedure of the collective bargaining agreement); and

(c) whether Defendant is not liable under 26 M.R.S.A. section 629 because the with-

---

agrees that this issue is not germane to the limited scope of the Court's inquiry today, and therefore testimony concerning this dispute is unnecessary.

**4.** The parties attached a copy of this agreement as Exhibit F to the Stipulated Record, as well as a copy of the warning notice given to Plaintiff as a result of this agreement as Exhibit F–1.

holding was done pursuant to a written and signed agreement made as a result of collective bargaining.

In its post-trial brief, filed with the Court on February 28, 1989, Defendant withdrew its defense relating to issue (c). Accordingly, the Court addresses the remaining two issues in turn.

### A. Plaintiff's Recovery under 26 M.R.S.A. section 629

■ Plaintiff is entitled to relief under 26 M.R.S.A. section 629. Section 629 provides in pertinent part:

> No person, firm or corporation shall require or permit any person, as a condition of securing or retaining employment to work without monetary compensation or when having an agreement, verbal, written or implied that a part of such compensation be returned to the person, firm or corporation for any reason other than for the payment of a loan, debt or advance made to the person. . . .

The stipulated record in this case reveals a clear violation of section 629.

As expressed in the agreement dated April 2, 1986, Plaintiff was permitted to retain his employment at UPS only upon the express, written condition that a part of his compensation be returned to his employer. As a result of this agreement, Plaintiff retained his employment, and Defendant retained $50 per week from Plaintiff's compensation. Under section 629, such an arrangement is permissible only under the specified limited circumstances, which are: payment of a loan, debt, or advance made to the person. 26 M.R.S.A. § 629.

The facts here do not fit within any of the section 629 exceptions permitting paycheck deductions as a condition of employment. It would be difficult to characterize Plaintiff's stipulated obligation as either a loan or an advance made to Plaintiff. Indeed, neither party has even suggested such a characterization. Nor can the obligation be characterized as a debt, as such term is defined within the confines of section 629.

For purposes of this subchapter, the word "debt" means a benefit for the employee. Debt does not include items incurred by the employee in the course of the employee's work or dealing with the customers on his employer's behalf, such as cash shortages, inventory shortages, dishonored checks, dishonored credit cards, damages to the employer's property in any form or any merchandise purchased by a customer.

26 M.R.S.A. § 629. Plaintiff's wages were withheld to repay to his employer the value of equipment that was allegedly misdelivered. The Court finds that this withholding was applied to "an item incurred by the employee in the course of employee's work or dealing with the customers on his employer's behalf," similar to cash or inventory shortages, dishonored checks or credit cards, or damage to the employer's property given as examples in section 629. Thus, the sums withheld from Plaintiff's paycheck did not go toward a loan, debt, or advance that would constitute an exception to violations of section 629.

■ In arguing that Plaintiff is not entitled to relief under section 629, Defendant cites the Maine Supreme Judicial Court's opinion in *Knoppers v. Rumford Community Hospital*, 531 A.2d 1276 (Me.1987), for the proposition that Plaintiff is not an "employee" as the word is used within the section. The Court disagrees, and finds that *Knoppers* does not support Defendant's proposition. The Maine Law Court's interpretation of "employee," as that term appears in 26 M.R.S.A. section 626,[5] is that it includes "working people who are dependent upon full and regular wage payments to meet their weekly needs." *Id.* at 1280. Dr. Knoppers, plaintiff in that action, was a salaried physician who was paid monthly under a written contractual agreement. The Law Court, in finding that Dr. Knoppers was not an "employee," stated that his problem was entirely distinct from that of typical wage earners who are dependent upon weekly paychecks. *Knoppers*, therefore, implicitly teaches that

---

**5.** 26 M.R.S.A. section 626 governs the terms under which an employee may be terminated.

weekly wage earners, like Plaintiff here, are considered "employees."[6]

The Court thus finds no merit in Defendant's claim that Plaintiff is not considered an employee under section 629. The Court finds that Defendant has required or permitted Plaintiff to retain his job at UPS on the express condition that a part of his compensation be returned to Defendant for a reason other than the repayment of a loan, debt, or advance made to Plaintiff. The Court, therefore, concludes that Defendant's conduct violates 26 M.R.S.A. section 629.

B. *Plaintiff's Failure to Exhaust Contractual Remedies Under the Collective Bargaining Agreement*

■ Notwithstanding the Court's determination above that Defendant's conduct violates 26 M.R.S.A. section 629, Defendant claims that Plaintiff's failure to grieve the issue under the collective bargaining agreement bars recovery on the claim. Defendant argues that the collective bargaining agreement provided Plaintiff with the mechanism to contest the allegation that he misdelivered UPS packages.[7] Rather than contest the allegation through established grievance procedures, Plaintiff chose to admit to the charges in exchange for lenient treatment. Defendant argues that, even after Plaintiff signed the agreement agreeing to wage withholding, Plaintiff could have filed a grievance alleging that the withholding violated Article 10 of the collective bargaining agreement.

Defendant contends that Plaintiff's failure to exercise and exhaust his contractual remedies is fatal to his claim. As a general matter, Defendant's claim that exhaustion of contractual remedies is a prerequisite to a judicial resolution has merit. In *Barrentine v. Arkansas–Best Freight System, Inc.*, 450 U.S. 728, 736, 101 S.Ct. 1437, 1442, 67 L.Ed.2d 641 (1980), the United States Supreme Court acknowledged that courts ordinarily defer to collectively bargained dispute resolution procedures when the parties' dispute arises out of the collective bargaining process. However, Plaintiff here bases his claim upon a right that exists by virtue of statutory enactment, not by contractual agreement. The Supreme Court in *Barrantine* went on to differentiate between contractually based and some statutorily based claims:

> [w]hile courts should defer to an arbitral decision where the employee's claim is based on rights arising out of the collective-bargaining agreement, different considerations apply where the employee's claim is based on rights arising out of a statute designed to provide minimum substantive guarantees to individual workers.

450 U.S. at 737, 101 S.Ct. at 1443.

Accordingly, where a statute providing minimum substantive employment guarantees is the basis for the employee's suit, dispute resolution procedures in a collective bargaining agreement do not govern. In its Memorandum of Decision and Order dated December 30, 1988, this Court held that 26 M.R.S.A. section 629 constitutes a "minimum labor standard" that remains unaffected by collective bargaining activity. *Beckwith v. United Parcel Service*, 703 F.Supp. 138, 144–45 (D.Me.1988). The Court held then that as a minimum labor standard established by the state legisla-

---

**6.** The Court also notices *sua sponte* that unlike section 626, which clearly states that it applies to any *employee*, section 629 instead applies expressly to any *person*. 26 M.R.S.A. § 626 begins "[a]ny *employee* leaving his or her employment ..." (emphasis added). In contrast, 26 M.R.S.A. § 629 begins by saying "[n]o person, firm or corporation shall require or permit any *person* ...." Section 629 goes on to use "person" and "employee" interchangeably. The use of "person" in section 629 further weighs against Defendant's argument, because "person" encompasses a broader range of worker than does "employee." Thus, even if the Court were to accept Defendant's argument that Plaintiff is not an "employee" as the term is used in section 626, the Court would find that Plaintiff is a "person" as this term is used in section 629.

**7.** Article 41, Section 2 of the collective bargaining agreement which governed the terms of Plaintiff's employment defines a grievance as "any controversy, complaint, misunderstanding or dispute arising as to interpretation, application or observance of any of the provisions" of the agreement or its supplement. Section 2 then outlines in detail the grievance procedure to be followed by employees covered by the contract.

ture, section 629 may not be bargained away or superceded through collective bargaining. *Id.* at 145. The Court holds today that as a minimum labor standard established by the state legislature, section 629 permits Plaintiff to bring his action regardless of whether he has exhausted his contractual remedies. *Barrantine*, 450 U.S. 728, 101 S.Ct. at 1437.

### IV. ORDER

As indicated above, the parties have stipulated that the total amount to date deducted from Plaintiff's paycheck is $4,300. Accordingly, it is ORDERED that judgment be, and it is hereby, GRANTED in favor of Plaintiff in the amount of four thousand three hundred dollars ($4,300.00), plus interest and costs as determined by law. It is hereby DECLARED that Exhibit F to the Joint Stipulated Record, dated April 2, 1986, and consisting of a written agreement by Plaintiff that the total of seven thousand eight hundred fourteen dollars ($7,814) be deducted, in weekly installments, from his wages as reimbursement for the subject loss is *NULL* and *VOID* and unenforceable against Plaintiff. Judgment to enter.