C. Bernadette Farrell
*vs.*
Henry F. Kramer

Aroostook.   Opinion, September 3, 1963.

*George B. Barnes,* for Plaintiff.

*Solman and Solman,*
*by David Solman,* for Defendant.

Sitting: Williamson, C. J., Webber, Tapley, Sullivan, Siddall, Marden, JJ.

WEBBER, J.   This was a complaint for slander on which the plaintiff was awarded a verdict of $17,500.   The defendant seasonably filed a motion for a new trial and the matter is before us on the defendant's appeal from the denial of that motion and upon his appeal from final judgment.   The determinative issue is whether or not the jury's assessment of damages was excessive under all the circumstances of the case.

The defendant filed a counterclaim charging the plaintiff with both libel and slander but the jury treated this claim as without merit as evidenced by their verdict.   We treat the issue thereby presented as a jury question and decline to disturb the verdict upon the counterclaim.

The evidence most favorable to the plaintiff discloses the following facts, most of which are not in dispute.   The plaintiff is a registered nurse possessed of skill and experience in her profession.   Before taking up residence in Maine she was last employed as the head nurse in the recovery room of a large metropolitan hospital.   Her competence as a nurse is not questioned.   In 1953 she joined the staff of the Cary Memorial Hospital in Caribou and in 1956 became the night supervisor of nurses.   The defendant is admittedly a competent and experienced physician and surgeon.   In April, 1959 the defendant performed a surgical operation upon a patient in the Caribou hospital.   The plaintiff became critical of the post-operative treatment being given this patient.   She made a series of complaints to the supervisor of nurses, the hospital administrator, the patient's attending physician, the chairman of the hospital board, and to the Town Manager who was also a board member.   In effect these complaints charged the defendant with neglect of the patient.   The making of the complaints touched off a personal feud between the plaintiff and the defendant which was to continue unabated for more than a year and which culminated in the trial of the instant case.

In July, 1959 the plaintiff was dismissed from her employment at the hospital. No reason for the discharge was assigned at the time thereof but the evidence of hospital officials indicates that they were then convinced that the plaintiff had discussed the hospital and the treatment of specific cases therein in such places and in such a manner as to constitute unprofessional conduct on the part of a nurse. The plaintiff unsuccessfully lodged a request for a hearing before the Board of Directors. On August 19, 1959 the plaintiff suffered a miscarriage. In September of that year she appealed to the Caribou Town Council for a review of her discharge but the Council disclaimed any authority to act in connection with hospital affairs. In the same month she wrote to the Executive Director of the Maine Medical Association in effect charging the defendant with neglect of his professional duty and also with having exerted influence to procure her discharge. In response to this complaint a hearing was held by the Grievance Committee of the Aroostook County Medical Association as a result of which the charges against the doctor were dismissed. In June, 1960 a new administrator was employed by the hospital. In the following August the plaintiff was re-employed as a member of the hospital staff upon the stated condition that she not discuss hospital business outside of the hospital. On August 20, 1960 the defendant had occasion to make a telephone call to the hospital as a result of which he discovered for the first time that the plaintiff had returned to staff duty. Although the hour was very late, he immediately called the administrator and uttered to him the words which form the basis of the plaintiff's action. He said, "I wanted to ask you if you would stoop so low as to hire that creep, that malignant son of a bitch, back to work for you in the hospital." He added that "she was unfit for the care of patients" and that "he could prove that * * * and intended to make an issue of it." This conversation was duly reported by the administrator to the next

meeting of the hospital directors but the plaintiff was continued in her employment and in fact remained in the employ of the hospital up to and at the time of trial. In the spring of 1961 the plaintiff for reasons unrelated to the making of the defamatory remarks asked to examine the records of the meetings of the board of directors. She was afforded an opportunity to do so and from those records learned for the first time of the statements made by the defendant with reference to her. Shortly thereafter she instituted this action.

Although the defendant has sought to raise certain other issues by his statement of points on appeal, his contentions with respect thereto are without merit and need not be considered here. The only valid issue raised by the defendant on appeal relates to assessment of damages. That portion of the defendant's remarks which discredited the plaintiff's competence as a nurse may be taken to be slanderous *per se*. *Pattangall* v. *Mooers*, 113 Me. 412; Restatement of the Law of Torts, Sec. 573. In such cases malice is implied and without proof of special damages the claimant may recover compensatory damages for those results which are presumed to flow naturally, proximately and necessarily from publication of the slander. "She is entitled to damages sufficient to compensate her for her humiliation and for such injury to her feelings and to her reputation as have been proved or may reasonably be presumed." *Elms* v. *Crane*, 118 Me. 261, 266; *Boulet et al.* v. *Beals*, 158 Me. 53, 60. Punitive damages are allowable if actual malice is shown. *Boulet et al.* v. *Beals, supra*.

Applying these rules to the facts of the present case we note at the outset that no special damages are shown. The plaintiff lost no employment as a result of the defamatory remarks. In fact the slander remained a well kept secret known only to the administrator and the Board of Directors of the hospital until the plaintiff herself unearthed it from

the records and gave it the publicity attendant upon litigation. "The plaintiff is not entitled to damages for the publicity which this trial has caused." *Elms* v. *Crane, supra,* at page 266. We must conclude that only a modest portion of the verdict was attributable to compensatory damages. It follows therefore that a very substantial portion of the verdict must have been awarded as punitive damages.

There was some evidence in this case which would justify a jury finding of actual malice and it was proper for the jury to award some amount as punitive damages. "It is said, in vindication of the theory of punitive damages, that the interests of the individual injured and of society are blended." *Stacy* v. *Portland Publishing Co.,* 68 Me. 279, 287. The award of "smart" money may tend to deter the defendant and others from malicious and wrongful conduct in the future. The degree and extent of the punishment inflicted by a verdict must vary from case to case and all the circumstances must be taken into account. Provocation, though no excuse for slander, may be a mitigating factor when punitive damages are assessed. See *Baltimore & O. R. Co.* v. *Barger* (1894), 80 Md. 23, 30 A. 560, 562. The general rule is well stated in 15 Am. Jur. 739, Sec. 298, as follows: "In assessing exemplary damages the nature, extent, and enormity of the wrong, the intent of the party committing it, and, generally, *all the circumstances attending the particular transaction involved, including any mitigating circumstances* which may operate to reduce without wholly defeating such damages, may be taken into consideration * * * ." (Emphasis ours.) Although there is ample and respectable authority supporting the view that provocative acts and conduct of a plaintiff may under proper circumstances tend to reduce the *compensatory damages* awarded for defamation (*Conroy* v. *Publishing Co.* (1940), 306 Mass. 488, 28 N. E. (2nd) 729; Annot. 132 A. L. R. 932, and cases cited), we are satisfied that such factors should

be considered only in mitigation of *punitive* damages. What appeals to us as the better reasoned rule was stated by the writer of an article in 29 Georgetown L. J. 126 (132 A. L. R. 954) who concluded that provocation should act only to reduce punitive damages since "only to the extent that the defendant may be penalized for malice by imposition of exemplary damages may plaintiff be penalized for having provoked the wrong by mitigation of the recovery." The following cases support this view. *Earl* v. *Times-Mirror Co.* (1921), 185 Cal. 165, 196 P. 57, 63; *Gambrill* v. *Schooley* (1902), 95 Md. 260, 52 A. 500, 506; *La Porta* v. *Leonard* (1916), 88 N. J. L. 663, 97 A. 251; *Alderson* v. *Kahle* (1914), 73 W. Va. 690, 80 S. E. 1109, 1111; *Massuere* v. *Dickens* (1887), 70 Wis. 83, 35 N. W. 349, 352.

We are satisfied that the damages awarded in this case are grossly excessive. The plaintiff has obviously convinced herself that the defendant was able to procure her discharge from the hospital staff although this conclusion on her part rests only upon suspicion and conjecture. Her lost wages, her miscarriage, the shame and humiliation accompanying her discharge, all occurred *prior* to August 20, 1960, the date when the defamatory remarks were uttered. She lays no particular stress on any results flowing from the slander itself but rather holds the defendant responsible and accountable for every misfortune which befell her during the previous thirteen months. We can only conclude that the jury was persuaded that her suspicions were justified and that they sought to punish the defendant for much that could not be proved against him by credible evidence. In review, however, we are compelled to address our attention only to those damages that demonstrably flow from and are related to the remarks made on August 20, 1960. We are directly concerned with what occurred *after* that date. As already noted, the compensatory damages must necessarily comprise only a small portion of the total verdict on

the basis of the plaintiff's own testimony. As we have stated, there being some evidence of actual malice on the part of the defendant, some amount may properly be awarded as exemplary damages. We have purposely reviewed in some detail the events which occurred prior to August 20, 1960 because in our view those events bear directly upon the mitigation of punitive damages. The plaintiff began the feud which subsequently raged between the parties by launching an attack upon the defendant's professional competence. Implicit in her criticism was the thinly veiled suggestion that her judgment as to proper methods of post-operative treatment of a patient was better than his. Any professional nurse knows, or should know, that criticism of this sort will almost certainly induce irritation, annoyance and even anger on the part of any medical practitioner against whom it is directed. This attack was followed in due course by a direct complaint which forced the defendant to defend himself before a grievance committee of the medical association. This complaint must be deemed groundless. The decision of a competent board dismissing the charge is not under review and may not be challenged in the instant case. We are therefore presented with yet another instance of conduct on the part of the plaintiff well calculated to arouse the anger and hostility of the defendant. Human frailties, emotions and passions being what they are, it should not surprise anyone that the defendant deemed himself tormented and persecuted by the plaintiff and thereupon abandoned that caution and restraint which is required by society. Although the slander is not thereby excused, such provocation will substantially diminish both the public interest in the punishment of the defendant and the plaintiff's right to have severe punishment inflicted. Under these circumstances a verdict of $17,500 is patently and grossly excessive and must reflect either an inability on the part of the jury to heed the instructions of the presiding

justice as to the proper elements of damage or an inability to deliberate in an atmosphere entirely free of passion and suspicion. We are satisfied that an award of $5,000 will fully compensate the plaintiff for any injuries attributable to these defamatory remarks and will afford an adequate deterrent to the defendant and to others under all the circumstances of this case.

The entry will be

*Appeal on counterclaim denied.*

*Appeal on complaint sustained and new trial ordered thereon unless plaintiff shall within 30 days from filing of mandate remit all of the verdict thereon in excess of $5,000.*