Leon C. MARCUS

v.

LEE S. WILBUR & CO.

Supreme Judicial Court of Maine.

Argued March 18, 1991.

Decided April 5, 1991.

Timothy C. Woodcock (orally), Mitchell & Stearns, Bangor, for plaintiff.

Nathan Dane, III (orally), Bangor, for defendant.

Before McKUSICK, C.J. and, ROBERTS, WATHEN, CLIFFORD, COLLINS and BRODY, JJ.

COLLINS, Justice.

Plaintiff Leon Marcus appeals the judgment for defendant boatyard Lee S. Wilbur & Co. entered in the Superior Court (Hancock County, *Silsby, J.*) on a boat repair contract breach claim and counterclaim following a non-jury trial. Plaintiff argues that defendant breached the contract term that required defendant to keep plaintiff informed of cost changes and the court erred in not considering this specific claim. Plaintiff also contends that there was no credible evidence on the record to support

the court's finding that defendant performed its duty in a workmanlike manner and did not overcharge. Finding no prejudicial error and finding credible evidence to support the decision of the court, we affirm.

Plaintiff owned the Leon Charles, a 44-foot sailboat. Plaintiff asked defendant, to inspect the boat and submit a cost estimate of repairs. In a letter, plaintiff listed the boat repairs he wanted made. The last paragraph of the letter told defendant that plaintiff expected to be informed of estimate fluctuations. Defendant knew that it was to keep plaintiff up to date on the cost. Plaintiff testified that the first oral estimate was $18,000. The first written estimate was $20,709.23, "shipping and storage extra," quoted to plaintiff in a letter from defendant. Plaintiff agreed to this amount. At the bottom of this letter either plaintiff or his agent had made the handwritten notation "get started." Work on the boat began in January, 1985. On February 22, 1985, defendant sent a statement to plaintiff indicating that the work completed at that time totalled approximately $16,000. Soon after this statement, defendant sent plaintiff a revised estimate of $37,464.48 with a list of items that were not included in this estimate. Plaintiff wrote a scathing letter to defendant on March 21, 1985 objecting to the revised estimate. At the end of this letter, plaintiff said that he hoped to decide the issues in a meeting with defendant on the following Monday. Plaintiff testified that they met, discussed the estimate, and he authorized defendant to continue to work on the boat. Defendant testified that it was its understanding at that time that it was to go ahead with the repairs. Between March and June, there were no written communications between the parties but both testified to numerous verbal communications. In June, 1985, plaintiff went to the boatyard and received the bill, including the amounts for services specifically not included in the February estimate. The total amount was $40,113.59, approximately $12,000 of which had been paid. Defendant would not let plaintiff have the boat unless he paid $25,000. Plaintiff paid, leaving a balance of approximately $2,500. A July bill showed an additional $8,461, representing charges incurred by plaintiff from June through July. Plaintiff made at least one more payment. The last bill, dated October 31, 1985, showed a balance due defendant from plaintiff of $9,160.41. Plaintiff noticed several problems with the boat immediately after he took possession and during the next two summers.

In his complaint, plaintiff claimed that the work of defendant was done in a negligent and unworkmanlike manner. During the trial, plaintiff argued that defendant had breached the contract provision to keep plaintiff informed of changes in the estimates. Defendant denied any breach and filed a counterclaim for the amount outstanding on the boat repair bill plus interest. A non-jury trial was held. Four persons testified: plaintiff, the man who bought the boat from plaintiff and who was offered by plaintiff as an expert in yacht design and boatyard operation, the owner of the boatyard, and the boatyard's service manager. Reciting some of the facts it found, the court ordered judgment for defendant on the claim and the counterclaim. Plaintiff made a general motion for findings of facts and conclusions of law. It was denied because the court felt that the facts noted in its opinion were adequate to support the judgment. Plaintiff appealed.

Plaintiff contends that a term of the contract was that defendant keep plaintiff informed of fluctuations in the cost estimates as work proceeded on his boat and defendant breached that term. He argues further because the court failed to mention this provision and its alleged breach in its order, it did not consider it and this failure was error.

■■■ In his closing argument, plaintiff argued for the first time that defendant had breached its duty to keep him informed of cost changes. The court noted in its opinion that plaintiff claimed he had not authorized some of the work but otherwise did not mention this specific issue. Although plaintiff requested findings of facts and conclusions of law, his motion was a general one and did not direct the court's

attention to the absence of facts on this particular issue. Plaintiff did not in any other way (for example, move to alter the judgment) give the trial court a chance to correct this alleged error. Because it was not presented to the court, this claimed error was not properly preserved for appeal. *See Balkan v. Johnston,* 561 A.2d 177, 178 (Me.1989); *Poire v. Manchester,* 506 A.2d 1160, 1163–64 (Me.1986). Moreover, there is evidence in the record to support the finding that the defendant did not breach a duty to keep plaintiff informed of the changes. There were at least four written communications dealing with cost and both parties testified to many verbal communications.

■ Plaintiff next argues that there was no credible evidence to support the court's finding. His argument is without merit.

■ Because the contract was not one discreet writing, but a series of written estimates, letters, and verbal communications, the task of the court was to listen to the witnesses and review the writings to decide both the terms of the agreement and whether there had been a breach. *See Blue Rock Industries v. Raymond International, Inc.,* 325 A.2d 66, 73 (Me.1974). One of the implied terms of every repair contract is "an undertaking to perform the work in a reasonably skillful and workmanlike manner, having regard to the general nature and situation of the projected object and the purpose for which it was manifestly designed." *Gosselin v. Better Homes, Inc.,* 256 A.2d 629, 639–40 (Me.1969). Here, the court had to decide whom to believe. *See Tonge v. Waterville Realty*

*Corp.,* 448 A.2d 902, 905 (Me.1982) (the factfinder judges credibility). The court found that the work that was agreed to was done in a reasonably workmanlike manner and defendant did not overcharge. These findings will "not be disturbed on appeal unless found to be clearly erroneous." *Cannan v. Bob Chambers Ford,* 432 A.2d 387, 390 (Me.1981). *See Harmon v. Emerson,* 425 A.2d 978, 981–82 (Me. 1981).

There is evidence on the record to support the court's conclusions. During trial, plaintiff presented a long list of complaints about the boat, that the difficulties were caused by defendant's workmanship, and that defendant overcharged. Defendant's evidence was that either the understanding of plaintiff was not its understanding or that it had done as it was instructed in a workmanlike way and that it had not overcharged. Supported by credible evidence on the record, the court believed defendant's witnesses. It ordered judgment for defendant on the claim and counterclaim, awarding defendant the balance due on the bill plus interest. The findings of the court were not clearly erroneous.

The entry is:

Judgment affirmed.

All concurring.