Jane MARSTON

v.

NEWAVOM, et al.

Supreme Judicial Court of Maine.

Argued June 16, 1993.
Decided July 30, 1993.

Elliott L. Epstein (orally), Isaacson & Raymond, Lewiston, for plaintiff.

Kim R. Vandermeulen (orally), Augusta, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS, RUDMAN and DANA, JJ.

WATHEN, Chief Justice.

Defendants Newavom, Mary Ann Beinecke[1], and Al Dubay[2] appeal the judgment of the Superior Court (Cumberland County, *Wernick, A.R.J.*) entered on a jury verdict in favor of plaintiff Jane Marston on her slander action and on her claim for wrongfully withheld wages pursuant to 26 M.R.S.A. § 626 (1988). On appeal defendants contend that (1) plaintiff is not an "employee" covered by 26 M.R.S.A. § 626 (1988), (2) the verdict should be set aside because plaintiff failed to prove her claim as alleged, (3) there was no actionable slander because the statement at issue was true, (4) the court erroneously instructed

---

**1.** Beinecke is the president and principal shareholder of Newavom.

**2.** Dubay is the former controller of Newavom.

the jury on the definition of slander, (5) the evidence does not support a finding of slander per se, and (6) the compensatory damages awarded are excessive. Finding no error, we affirm the judgment.

From August 1989 to January 1990, plaintiff was employed by Newavom, a small business specializing in the design and sale of fine fabrics and crafts, as Vice President for Sales and Marketing. Shortly before plaintiff's last day of work at Newavom, Dubay, Newavom's controller, audited an American Express bill and discovered that plaintiff had charged personal items on her company credit card.[3] He then audited additional credit card statements going back to September 1989, and found additional personal charges by plaintiff. Although Dubay found several payroll deductions for plaintiff during this time, he was unable to trace them to plaintiff's personal charges or to determine why the deductions had been made. He then reviewed his findings with Beinecke, who confirmed that certain charges made on plaintiff's company credit card were personal. Beinecke appeared to be shocked at this discovery.

Dubay, who had begun working for Newavom only two weeks before this incident, did not inquire further into the company's past practice regarding the use of credit cards. Evidence was offered, however, that it was accepted practice for employees with cards to charge personal expenses provided they brought the charges to the controller's attention and paid them in a timely manner. Plaintiff had charged personal expenses on Newavom's credit card in the past, and had paid them promptly after reviewing the credit card billing. Michael Dugay, Newavom's former chief operating officer, had also charged personal expenses on his business card.

Dubay and Beinecke met with plaintiff privately the next day, which was plaintiff's last day of employment at Newavom. Dubay presented his accounting of both the amount Newavom owed to plaintiff for un-paid wages and accrued vacation, and the amount that he had concluded plaintiff owed Newavom for unreimbursed personal expenses charged on the company's credit card. After netting out the totals, Dubay concluded that plaintiff owed Newavom $1,340.78 and demanded that she pay it immediately or face criminal charges. Plaintiff acknowledged that she had made personal charges on the company's credit card and that she intended to pay for them, but disagreed with Dubay's accounting and stated that she needed to review the charges against her personal records before paying them. Plaintiff also informed them that more personal charges would appear on Newavom's next American Express bill. The parties then agreed to defer settlement of their accounts until plaintiff reviewed her records.

Plaintiff was "very, very upset" by the implication that she had stolen money from the company. After the meeting she turned in her keys and credit card, and abruptly left the premises instead of attending a going-away party in her honor that had been scheduled to take place immediately after the meeting.

Dubay and Beinecke proceeded to the party, where Dubay, with Beinecke's approval, issued a short statement regarding the reason for plaintiff's absence. Approximately seven employees of Newavom were in attendance. Ralph Copeland, a Newavom employee who attended the party, testified that Dubay said that "Jane had made unauthorized charges on company credit cards, therefore would not be attending the meeting. [Dubay] thought she was too embarrassed." Dubay recalled the incident as follows: "I simply told them that in the course of the termination review there were indications that Mrs. Marston charged personal items on her corporate American Express Card, and that evidently she was too embarrassed to attend the party and subsequently left."

Plaintiff subsequently made written demand for unpaid wages pursuant to 26

---

3. The company had one American Express account number, but several cards were issued on that account in the names of management em-ployees. Plaintiff had such a card with her name on it.

M.R.S.A. § 626, and received partial payment. The payment was accompanied by a letter from Dubay demanding payment of the sum he thought she owed for personal charges and threatening civil litigation and criminal prosecution if she failed to make prompt payment.

Plaintiff then filed suit asserting the following claims: (1) breach of contract; (2) violation of 26 M.R.S.A. § 626; (3) quasi-contract; (4) slander; and (5) intentional infliction of emotional distress. Newavom filed a counterclaim for personal expenses charged on plaintiff's business credit card. Before trial, defendants moved for a partial summary judgment on plaintiff's section 626 claim on grounds that plaintiff was unable to state a claim because she was not an "employee" within the meaning of the statute. The motion was denied. The case was tried to a jury and at the close of all the evidence, on a motion for a directed verdict, the Superior Court dismissed plain-

tiff's claim for intentional infliction of emotional distress.

The jury awarded plaintiff $50,000 in damages for slander and found Newavom liable under 26 M.R.S.A. § 626 for unpaid wages and liquidated damages in the amount of $5,344.47 plus interest. The court also awarded plaintiff attorney's fees and costs totaling $3,163.73 for her section 626 claim. The jury awarded Newavom $845.26 on its counterclaim. The defendants then filed a motion for judgment notwithstanding the verdict or in the alternative, a new trial or a remittitur. The Superior Court denied the motion and this appeal followed.

■■■■ Defendants first argue that plaintiff is not an "employee" within the provisions of 26 M.R.S.A. § 626 as set forth in the 1988 Maine Revised Statutes.[4] Although that statute did not define the term "employee," [5] defendants rely on dicta in

---

**4.** 26 M.R.S.A. § 626 (1988), *amended by* P.L. 1991, ch. 162 was in effect at the time of plaintiff's resignation. It reads as follows:

Any employee leaving his or her employment shall be paid in full within a reasonable time after demand at the office of the employer where payrolls are kept and wages are paid; provided that any loan or advance against future earnings or wages may be deducted if evidenced by a statement in writing signed by said employee. Whenever the terms of employment include provisions for paid vacations, vacation pay on cessation of employment shall have the same status as wages earned.

For purposes of this subchapter, a reasonable time shall mean the earlier of either the next day on which employees would regularly be paid or a day not more than 2 weeks after the day on which the demand is made.

In any action for unpaid wages brought under this subchapter, the employer shall not deduct as a setoff or counterclaim any moneys allegedly due the employer as compensation for damages caused to the employer's property by the employee, or any moneys allegedly owed to the employer by the employee, notwithstanding any procedural rules regarding counteractions; provided that any loan or advance against future earnings or wages may be deducted if evidenced by a statement in writing signed by said employee, and that nothing in this section shall be construed to limit or restrict in any way any rights which the employer now has to recover, by a separate legal action, any moneys owed said employer by said employee.

An action for unpaid wages under this section may be brought by the affected employee or employees or by the Department of Labor on behalf of the employee or employees. An employer found in violation of this section shall be liable for the amount of unpaid wages and, in addition, the judgment rendered in favor of the employee or employees shall include a reasonable rate of interest, an additional amount equal to twice the amount of those wages as liquidated damages and costs of suit, including a reasonable attorney's fee.

**5.** In 1991, the Legislature amended section 626 to include the following definition of "employee:" "any person who performs services for another in return for compensation, but does not include an independent contractor." P.L. 1991, ch. 162. We reject plaintiff's contention that this amendment should be applied retroactively. Generally, "unless the contrary clearly appears, a material change of a statute by amendment thereof evidences a purpose and intent to change the effect of the existing law, not to repudiate the Court's interpretation of existing law." *Matheson v. City of Portland,* 288 A.2d 476, 478 (Me.1972). Because the Legislature did not state its intent that the amendment be applied retroactively in "strong, clear and imperative language" the amendment should be applied prospectively. *Terry v. St. Regis Paper Co.,* 459 A.2d 1106, 1109 (Me.1983) (quoting *Barrett v. Herbert Engineering, Inc.,* 371 A.2d 633, 635 n. 1 (Me.1977)).

*Knoppers v. Rumford Community Hosp.*, 531 A.2d 1276, 1280 (Me.1987) stating that: the "Legislature did not intend … that salaried corporate executives be treated as 'employees' within the meaning of [26 M.R.S.A. § 621]"[6] (and by implication section 626). Accepting the *Knoppers* rationale, however, we conclude that it does not control in this instance. Newavom is a corporation engaged in a mercantile business, and unlike the hospital in *Knoppers*, fits within the types of employers specified in section 621(1).

■ Defendants next argue that even if *Knoppers* is not dispositive of plaintiff's section 626 claim, that claim must be remanded for a new trial because the Superior Court erroneously directed the jury to conclude that plaintiff was an employee as defined by section 626. The court instructed the jury, without objection, as follows:

> Now in this case there are certain concepts that are not much disputed, if disputed at all. I'm going to leave it to you to say first of all the plaintiff as an employee, you will decide whether the plaintiff was an employee, and I suggest to you that there isn't any real dispute about that.

The court's expression of an opinion on a factual issue during a jury trial generally is sufficient cause for a new trial at the request of the aggrieved party. *See* 14 M.R.S.A. § 1105 (1980). In this instance, however, it is uncontroverted that plaintiff is an employee under the common law "right to control" test. *See Murray's Case*, 130 Me. 181, 186, 154 A. 352 (1931) (setting forth factors that might be used in applying the "right to control" test). Because that is the proper test, defendants were not prejudiced and the instruction is not reversible error. *See State v. Kessler*, 453 A.2d 1174, 1176 (Me.1983) (Court's expression of opinion on uncontroverted fact

not cause for new trial). In addition, the instruction was not "inconsistent with substantial justice" because there was no evidence from which the jury rationally could find that plaintiff was not an employee under the "right to control" test. M.R.Civ.P. 61; *State v. Kessler*, 453 A.2d at 1176 (section 1105 should be read in the context of procedural rules).

■ Defendants next contend that the judgment must be vacated because plaintiff failed to meet her burden of proving the slanderous words "strictly as alleged." *Estes v. Estes*, 75 Me. 478, 481 (1883). Whether the proved statement varied impermissibly from the alleged statement, however, was not raised by defendants in the Superior Court and therefore was not preserved for appellate review. *See Marcus v. Lee S. Wilbur & Co.*, 588 A.2d 757, 758–59 (Me.1991).

■ Disregarding the standard of review, however, defendants do not prevail. Contrary to defendants' allegations, the trial testimony does not differ materially or substantially from the language alleged in the complaint. Both the allegations and the evidence convey the impression that plaintiff had used her company credit card in a dishonest manner, that the dishonest conduct had been discovered, and that she was too embarrassed to face her co-workers because her misconduct had been discovered. Finally, we note that the continuing validity of the strict standard prescribed in *Estes* is suspect in light of modern notice pleading and increased reliance on discovery.[7]

■ Defendants next argue that because one portion of the statement is true—that plaintiff charged personal expenses on Newavom's credit card—the slander verdict must be vacated. But that

---

6. 26 M.R.S.A. § 621(1) (1988) provides that specified classes of employers "shall pay weekly each employee engaged in his or its business the wages earned by the employee to within 8 days of the date of that payment …"

7. The narrow standard prescribed by *Estes* was relaxed in *Kimbell v. Page*, 96 Me. 487, 52 A. 1010 (1902). In that case, we held that "materi-

al words, those essential to the charges made, must be proved as alleged, but that some latitude may be allowed with respect to unimportant, connecting or descriptive words." *Saunders v. VanPelt*, 497 A.2d 1121, 1126 (Me.1985) (citing *Kimbell v. Page*, 96 Me. 487, 52 A. 1010 (1902)).

part of the statement, standing alone, is not what makes the whole statement defamatory. Although truth is a defense to slander, *Picard v. Brennan*, 307 A.2d 833, 834–35 (Me.1973), the defamatory language must be "construed in the light of what might reasonably have been understood therefrom by the persons who [heard] it. In interpreting the language, it is ... a question of ... the understanding of those to whom the words are addressed and of the natural and probable effect of the words upon them." *Id.* at 835 (quoting *Chapman v. Gannett*, 132 Me. 389, 391, 171 A. 397 (Me.1934)). In the instant case, the jury could rationally conclude that the defamatory statement imputed to plaintiff dishonest conduct in the use of her company credit card, and that plaintiff had not used the card in a dishonest manner.

■ Defendants next argue that the evidence does not support a finding of slander per se as a matter of law because the defamatory statement was not directed specifically at plaintiff's profession, and because it did not ascribe to her characteristics so essential to her profession of marketing that it had the potential to undermine her ability to pursue that profession. Contrary to defendants' contention, the law supports a conclusion that the defamatory statement in this case was actionable as slander per se. We have stated that "[a]ny charge of dishonesty against an individual, in connection with his business, whereby his character in such business may be injuriously affected, is actionable." *Orr v. Skofield*, 56 Me. 483, 487 (1869) (charging shipmaster with dishonesty is slanderous per se). More recently, we held that:

> [W]hen the defamatory words spoken have such a relation to the profession ... of the plaintiff that they directly tend ... to impair confidence in his character or ability, when, from the nature of the business great confidence must necessarily be reposed, they are actionable, although not applied directly by the speaker to the profession ... of the plaintiff.

*Pattangall v. Mooers*, 113 Me. 412, 415, 94 A. 561 (1915). These statements are in accord with the Restatement of Torts § 573 cmt. e (1938). Comment e provides that:

> Disparagement of a general character, equally discreditable to all persons, is not enough unless the particular quality disparaged is of such a character that it is peculiarly valuable in the plaintiff's business or profession. It is not necessary that the defamer refer to the other as engaged in the particular profession or calling in question. It is enough if the statement is of a character to be particularly disparaging of one engaged in such an occupation.

In the present action, the jury must have found that the defamatory statement asserted that plaintiff used the company's credit card in a dishonest manner and was caught. This goes to the issue of plaintiff's honesty in handling the company funds and other property entrusted to her. Plaintiff testified regarding the importance of trustworthiness in her profession as follows:

> In terms of my own personal experience the nature of what I do involves engaging the trust of either clients or people that I work for I think in three ways. I handle budgets directly. I have handled budgets up to two-and-a-half million dollars on a regular basis, so clients are even trusting their moneys to me in the instance of certain clients they are even trusting their products often of great value to me, diamonds, jewelry.... [s]o I am actually handling goods which require integrity and honesty in handling, and I think lastly in marketing which is really the study of how to project a positive image for a company, I'm dealing first and foremost with a company's good name and their reputation, and I can't conceive of the harm that could happen to me personally or to my career personally if my reputation in any of those areas was impaired.... [I] had at one point in time for a ... commercial well over a million dollars worth of jewelry in my personal possession without a bodyguard.

To imply that plaintiff, a Vice President of Marketing, had betrayed the confidence

of her employer, misused company funds, and engaged in dishonest and unethical acts, unquestionably tends to injure her in her profession. The evidence supports a finding of slander per se.

■ Defendants also contend that the trial court erroneously instructed the jury on the definition of slander per se. The court instructed the jury that the statement was slanderous per se if it "had a direct tendency to injure the plaintiff in her occupation or profession." Defendants argue that this "general instruction does not reflect the high standard which a plaintiff seeking recovery without proof of damages must satisfy." We previously have stated the standard for finding slander per se in terms almost identical to those used by the court as follows: "If slanderous words ... directly tend to the prejudice or injury of one in his profession, trade or business they are actionable [as slander per se]." *Pattangall v. Mooers*, 113 Me. at 415, 94 A. 561. The instruction was not erroneous.

■ Defendants' final contention is that the $50,000 award for compensatory damages is excessive under the circumstances of this case. They specifically claim that the jury "misapplied the theory of damages" by awarding plaintiff damages in excess of those "'sufficient to compensate her for her humiliation and for such injury to her feelings and to her reputation as have been proved or may reasonably be presumed.'" *Farrell v. Kramer*, 159 Me. 387, 390, 193 A.2d 560 (1963) (quoting *Elms v. Crane*, 118 Me. 261, 266, 107 A. 852 (1919)).

■ A jury's award of damages will be found to be excessive only if it is not rationally supported by the evidence. *Saunders v. VanPelt*, 497 A.2d 1121, 1126 (Me.1985). In addition, when, as here, the court refuses to grant a new trial or remittitur on grounds that the jury's damage award was excessive, the ruling will not be reversed except for a "clear and manifest abuse of discretion." *Ramirez v. Rogers*, 540 A.2d 475, 479 (Me.1988). The rationale for that standard is as follows:

The justice before whom an action has been tried is in a far better position than an appellate court to know whether in the light of his observations at the trial the damages awarded by the jury were so wholly inconsistent with the proof as to reflect some bias, prejudice or improper influence on the part of the jury or to support the conclusion that the verdict was the result of some mistake of fact or law on their part.

*Id.* (quoting *Mandarelli v. McGovern*, 393 A.2d 533, 535 (Me.1978)).

The jury heard testimony from which it could conclude that the defamatory statement was published beyond the original audience and was taken seriously. In addition, it occurred at a time when plaintiff was planning to seek new employment in the marketing field and therefore reasonably caused her to fear for future job prospects. Plaintiff testified to the importance of engaging the trust of her clients and to the mental anguish she suffered on learning of the defamatory statement.

■ When slander per se is established, a plaintiff need not prove special damages or malice in order to recover a substantial award. *Saunders v. VanPelt*, 497 A.2d at 1126. Injury to reputation and injury to feelings may be presumed from the publication of the defamatory statement. "Compensatory damages may include the elements of mental suffering, humiliation, embarrassment, [and] effect upon reputation ... so far as they have been proved or may reasonably be presumed." *Id.* The evidence of plaintiff's mental suffering could support a substantial award. *See Ramirez v. Rogers*, 540 A.2d at 479 (compensatory damage award of $50,000 warranted for anguish and humiliation suffered by plaintiff when television producer threatened to cancel feature on plaintiff's gymnastic student).

We conclude that the compensatory damages award is rationally supportable when the evidence is viewed in the light most favorable to plaintiff. *See Saunders v. VanPelt*, 497 A.2d at 1126. Further, the evidence does not support a conclusion that the trial court's denial of defendants' mo-

tion for a new trial or remittitur on the ground that the award was excessive constitutes a manifest abuse of discretion.

The entry is:

Judgment affirmed.

GLASSMAN, COLLINS, RUDMAN and DANA, JJ., concurring.

ROBERTS, Justice, with whom CLIFFORD, Justice joins, concurring in part and dissenting in part.

I agree with the Court's decision affirming the award of damages for defamation. I respectfully disagree with the Court's application of 26 M.R.S.A. § 626. We stated in *Knoppers v. Rumford Community Hospital,* 531 A.2d 1276, 1280 (Me.1987), that the Legislature intended that section 626 apply to "working people who are dependent upon full and regular wage payments to meet their weekly needs." That limitation would exclude salaried corporate executives. *See Black's Law Dictionary* 1200 (5th ed. 1979). Whether *dicta* or not, our statement in *Knoppers* should control the application of section 626 until the effective date of the 1991 amendment.