STATE OF MAINE

LINCOLN, ss.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-00-036
GAB - LIN- 12/13/2002

LINCOLN COUNTY SUPERIOR COURT
RECEIVED AND FILED
DEC 13 2002
SHARON SIMPSON
CLERK

NANCY CHURCHILL,

Plaintiff

v.

ORDER

UNIVERSITY OF MAINE SYSTEM,
JAMES DORAN, NOEL MARCH,
& RICHARD MEARS,

Defendants

DONALD L. GARBRECHT
LAW LIBRARY

DEC 17 2002

Before this court is the University of Maine System et al. (Defendants)'

Revised Motion for Summary Judgment pursuant to M.R.Civ.P. 56(c).

## FACTS

As the Project Director of the Maine Community Policing Institute (MCPI)

at the University of Maine at Augusta (UMA), Nancy Churchill (Plaintiff)

promoted community policing efforts statewide. Her employment duties also

included overseeing the MCPI program and administering a grant (COPS grant)

from the United States Department of Justice. The Plaintiff had written the COPS

grant, which made federal funds available for the partnering of local police with

local communities with a goal of preventing crime.

In September 1997, Defendant James Doran was appointed as the

Executive Assistant to the President of UMA, a position that entailed supervising

the Plaintiff. In 1999, Defendant Richard Mears, an Assistant Professor of

Criminal Justice at UMA, began receiving part of his salary from the COPS grant. In addition, the Volunteers of America of Northern New England (VOA), a non-profit consisting of a private group of citizens, had contracted with UMA to provide administrative services to the MCPI.

In September 1998, the Plaintiff's job description changed: she no longer administered the COPS fund and instead began working for the MCPI on matters such as community education. Defendant Noel March took over the Plaintiff's old responsibilities. On September 27, 1998, the Justice Department notified Defendant Doran that funds from the COPS grant would be suspended until certain accounting problems were rectified. After UMA addressed the accounting issues, the U.S. Justice Department released the funds remaining in the COPS grant in November 1998. On December 31, 1998, the Defendants terminated all of the Plaintiff's employment at UMA purportedly because of a lack of funding.

As a result of the Plaintiff's termination and statements made about the Plaintiff by the abovementioned Defendants, the Plaintiff filed a Second Amended Complaint (Complaint) alleging the following causes of action: defamation, intentional and negligent infliction of emotional distress, violating the Whistleblowers' Protection Act, and violating the Plaintiff's constitutional right to due process.

## DISCUSSION

The Law Court has stated that "[s]ummary judgment is no longer an extreme remedy. It is simply a procedural device for obtaining judicial resolution of those matters that may be decided without fact-finding." Curtis v. Porter, 2001 ME 158, ¶7, 784 A.2d 18, 21-22. When considering such a motion,

2

this court will view the evidence in a light most favorable to the Plaintiff, who is the nonmoving party. *Id.* at ¶6. This court also notes that "[i]f material facts are disputed, the dispute must be resolved through fact-finding, even though the nonmoving party's likelihood of success is small." *Id.* at ¶7.

**Count I – Defamation**

The Plaintiff alleges in her Second Amended Complaint that the defendants made defamatory statements to third parties pertaining to the way she carried out her job, which damaged her reputation in the community. The Law Court has adopted from the Restatement (Second) of Torts § 558 (1977) the following elements of common law defamation: 1) a false and defamatory statement concerning another; 2) an unprivileged publication to a third party; 3) fault amounting at least to negligence on the part of the publisher; 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication. Rippet v. Bemis, 672 A.2d 82 (Me. 1996) (citing Lester v. Powers, 596 A.2d 65, 69 (Me. 1991)). At the summary judgment stage, the Plaintiff has to establish a *prima facie* case consisting of the abovementioned elements. Rippett v. Bemis, 672 A.2d 82 (Me. 1996). Because the alleged defamatory words disparaged the Plaintiff's occupation, her claim can be characterized as slander per se. *See* Marston v. Newavom, 629 A.2d 587, 592 (Me. 1993). As a result, the Plaintiff does not have to prove special damages. *Id.* at 593.

The Defendants argue that the Plaintiff is a public official and therefore most prove that the defamatory statements were made with actual malice. *See* New York Times Co. v. Sullivan, 376 U.S. 254, 283 (1964). In the present case,

3

however, the public does not have an independent interest in the qualifications and performance of the Plaintiff, at least not more so than the public's general interest in the qualifications and performance of government employees as a group, because the extent of her authority was limited to overseeing federal grant funds for promoting community policing efforts. *See* True v. Lardner, 513 A.2d 257, 263 (Me. 1986) (holding that a public school teacher was not a public official). Therefore, the Plaintiff does not have to prove actual malice by clear and convincing evidence.

The Law Court has stated: "Having in mind that proof of the truth of statements alleged to be slanderous is always a defense, and that the defendant is therefore entitled to know precisely what statement is attributed to him, [the Justices of the Law Court] have always required that 'the words must be proved strictly as alleged.'" Picard v. Brennan, 307 A.2d 833, 834-35 (Me. 1973). The Plaintiff's claims must be reviewed with this standard in mind.

In paragraph 12(1) of the Complaint, the Plaintiff claims that Defendant Doran had on numerous occasions in September and October 1998 informed others that "the Plaintiff had 'misappropriated' seventy percent (70%) of the federal grant." Because the Plaintiff was bringing suit against a State institution such as UMA and its agents/employees, the Plaintiff had to comply with the Maine Tort Claims Act (MTCA). *See* 14 M.R.S.A. § 8101 et seq. (2002). Pursuant to the MTCA, the Plaintiff served notice on the Defendant University on August 9, 1999, which covered any claims for the 180-day period prior to the date of notice, that is, the time period before February 10, 1998. *See id.* at § 8107(1). Therefore, the MTCA precludes the Plaintiff from recovering for defamatory

statements made in September and October 1998. *See* <u>Pepperman v. Barrett</u>, 661 A.2d 1124, 1126 (Me. 1995).

In paragraph 12(2) of the Complaint, the Plaintiff claims that from February 1, 1999 to May 1, 1999 Defendants Doran, March, and Mears repeatedly informed members of the Maine Legislative Committee on Criminal Justice "that Plaintiff committed criminal acts in administering the grant for which she had responsibility, and that she was to be investigated by the Maine Attorney General for these criminal acts." However, the record does not support this contention.

In paragraph 12(3) of the Complaint, the Plaintiff claims that from February 1, 1999 to June 1, 1999 Defendant March and possibly other employees of the UMA informed Brian MacMaster from the Attorney General's Office "that Plaintiff had committed criminal acts related to her position at the University of Maine at Augusta and that she should be investigated." However, the record does not support this contention.

In paragraph 12(4) of the Complaint, the Plaintiff claims that from February 1, 1999 to October 1, 1999 Michael J. McAlevey, previously a defendant in this action, had on several occasions informed a Maine State Senator and Maine law enforcement officials "that Plaintiff had written a check for One Hundred Thousand Dollars ($100,000) to herself from the Maine Community Policing Institute grant and that she had subsequently been fired by the University of Maine for so doing." The Plaintiff argues that the Defendants made defamatory remarks about the Plaintiff to McAlevey, who in turn republished these remarks to others. The Law Court has held that "[t]he repetition of the slander by those to whom it was uttered, and after that by

5

others, may be regarded as fairly within the contemplation of the original slander and a consequence for which the defendant may be held responsible." Elms v. Crane, 107 A. 852, 854 (Me. 1919) (quoting Davis v. Starrett, 55 A. 516, 519 (Me. 1903)). Hence, if the Defendants are liable for their republished statements the question then becomes whether the Defendants are cloaked with discretionary function immunity pursuant to the MTCA. *See* 14 M.R.S.A. § 8111(1)(C) (2002). The evidence shows that the Defendants had made statements referring to the Plaintiff writing herself a check from federal grant money to McAlevey during a VOA meeting with officials from the Defendant University. Because this meeting concerned important fiscal matters involving governmental funds, the Defendants were engaged in discretionary activities within the scope of their duties. *See* Grossman v. Richards, 1998 ME 9, ¶7, 722 A.2d 371, 374. Therefore, the Defendants are immune from any liability pertaining the defamation claim in this paragraph.

In paragraph 12(5) of the Complaint, the Plaintiff claims that during the first week of April, presumably in 1999, Defendant Mears informed John Rogers, the Assistant Commissioner of Public Safety for the State of Maine, "that Plaintiff had been fired from the University of Maine because of financial improprieties." However, the record does not support this contention.

In paragraph 12(6) of the Complaint, the Plaintiff claims that during the third week of April 1999 the President of UMA along with Defendants Doran and Mears told the Executive Board of the VOA "that Plaintiff's performance as an employee had been substandard, that there were questions of criminal actions related to her management of the grant, including that she had misappropriated federal funds for her own use, and that she was responsible for a broad range of

6

financial problems that existed between UMA and VOA." Firstly, the record does not support the statement that the President of UMA was present at this meeting. Secondly, the nature of the meeting, which was held to resolve a billing dispute, conferred a conditional privilege on the participants. *See* Rice v. Alley, 2002 ME 43, ¶ 22, 791 A.2d 932, 936. Finally, the Plaintiff has not met the burden of showing that the Defendants abused the conditional privilege by acting with malice. *See id.* ¶ 23.

In paragraph 12(7) of the Complaint, the Plaintiff claims that from February 1, 1999 to June 1, 1999 Defendants March and Mears and possibly other employees of the Defendant University informed law enforcement officials "that Plaintiff was being investigated for criminal acts related to the grant for which she had responsibility while an employee at the University of Maine at Augusta." The record shows that Defendant Mears had told Mark Westrum, the Sheriff for Sagadahoc County, in a personal conversation that the Plaintiff had committed criminal acts in the context of misappropriating federal grant funds. Defendant March also had made similar comments to Westrum. A common interest conditional privilege does not apply to the Defendants' defamatory statements, which were made in the context of attacking someone's character as opposed to advancing an official purpose that would benefit society. *See* Rice v. Alley, 2002 ME 43 ¶ 22, 791 A.2d 932, 936. Furthermore, even though the U.S. Department of Justice is conducting an investigation that involves the Plaintiff, there is no evidence in the record that the Plaintiff has actually committed a crime pertaining to the misappropriation of federal grant funds. When this court views the evidence in this paragraph in a light most favorable to the Plaintiff, it appears that material facts are in dispute that can only be resolved through

7

further fact-finding. Finally, the Defendants as employees of UMA are not entitled to discretionary function immunity under the MTCA because their informal conversations cannot be reasonably viewed as falling within the scope of their employment duties. *See* 14 M.R.S.A. § 8111(1)(C) (2002).

In paragraph 12(8) of the Complaint, the Plaintiff claims that in June 1999 Defendant Mears and possibly other UMA employees told the MCPI Board of Directors at a meeting "that Plaintiff had misappropriated funds from the federal grant for which Plaintiff was responsible." However, the record shows that the two members of the MCPI Board of Directors who were actually present at the meeting did not hear Defendant Mears state that the Plaintiff had misappropriated the abovementioned funds.

## Count II – Intentional and Negligent Infliction of Emotional Distress.

The Plaintiff alleges in her Complaint that the Defendants have intentionally inflicted emotional distress on her. The Law Court has ruled that at the summary judgment stage the Plaintiff has to establish a *prima facie* case of intentional infliction of emotional distress with the following elements: "(1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from her conduct; (2) the conduct was so 'extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious, utterly intolerable in a civilized community'; (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was so severe that no reasonable [person] could be expected to endure it." Curtis v. Porter, 2001

8

ME 158, ¶10, 784 A.2d 18, 22-23. The Defendants argue that the Plaintiff cannot establish the first two elements above.

For purposes of this motion, however, there is evidence that Defendants March and Mears intentionally made or recklessly made defamatory statements concerning the Plaintiff that could ruin her livelihood and reputation, rising to an extreme and outrageous level. In the alternative, the Plaintiff's has also claimed that the Defendants have negligently inflicted emotional distress on her. However, the Law Court has held that "when the separate tort at issue [such as slander per se or intentional infliction of emotional distress] allows a plaintiff to recover for emotional suffering, the claim for negligent infliction of emotional distress is usually subsumed in any award entered on the separate tort." Curtis v. Porter, 2001 ME 158, ¶19, 784 A.2d 18, 26 (citing Rippett v. Bemis, 672 A.2d 82, 87-88 (Me. 1996)). Finally, for reasons stated above pertaining to paragraph 12(7) of the Complaint, the Defendants do not have personal immunity pursuant to the MTCA.

**Count III – Whistleblowing.**

The Plaintiff alleges in her Complaint that the Defendants violated the Maine Whistleblowers' Protection Act (WPA), which protects employees who are discharged by their employers for reporting in good faith to their employer or a public body violations of the law. *See* 26 M.R.S.A. § 833(1)(A) (2002). The Law Court has held that the Plaintiff must establish "that she engaged in activity protected by the WPA, (2) that she experienced an adverse employment action, and (3) that a causal connection existed between the protected activity and the adverse employment action." DiCentes v. Michaud, 1998 ME 227, § 14, 719 A.2d

509, 514. In the present case, the Plaintiff has shown that she reported what she believed was illegal conduct to Defendants Doran and March. The Defendants have in turn articulated a non-retaliatory reason for Plaintiff's termination, that is, that there were no longer federal grant funds to support her position. However, the Plaintiff has not established the critical causal connection between her reporting activities and her subsequent termination, nor has she established that the defendants were using a pretext to terminate her employment. Therefore, the Plaintiff's claim must fail.

**Count IV: Due Process**

The Plaintiff argues that the Defendants violated her right to due process under the Fifth Amendment of the U.S. Constitution as it applies to the States through the Fourteenth Amendment as well as under 42 U.S.C. § 1983.[1] More specifically, the Plaintiff alleges that prior to her termination the Defendants, in their capacity as state officials, were obligated to notify her of the charges pertaining to her termination and then provide her with an opportunity to respond to those charges. In other words, the Plaintiff claims that because she was not given a chance to tell her side of the story before she was terminated, the Defendants had effectively deprived her of due process.

However, the <u>Loudermill</u> case, upon which the Plaintiff relies, notes that the U.S. Constitution does not create a property interest in a job, but that state

---

[1] Title 42 U.S.C. § 1983, which authorizes a civil action for deprivation of constitutional rights, provides in part:

> Every Person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

10

law might create such an interest. *See* <u>Cleveland Bd. of Educ. v. Loudermill</u>, 470 U.S. 532, 538 (1985). In that case an Ohio statute clearly gave the civil service employee a property right in continued employment provided he did a good job. *See id.* at 538-539. In the present case the evidence shows that the Plaintiff's job was not created pursuant to a state statute or rule and instead was contingent upon the federal government continuing to fund the underlying program supporting the Plaintiff's job. As a result, the Plaintiff's due process claim must fail.

WHEREFORE this court shall **GRANT** the Defendants partial summary judgment on Claim I relating to all but paragraph 12(7) of the Plaintiff's Second Amended Complaint, **GRANT** the Defendants summary judgment on Counts III (Whistleblower Act) and IV (Due Process) of the Plaintiff's Second Amended Complaint, and **DENY** the Defendants summary judgment on Count II of the Plaintiff's Second Amended Complaint.

For Plaintiff:
Dated: December _11_, 2002

G. Arthur Brennan
Justice, Superior Court

For Plaintiff:
Howard Reben, Esquire

For Defendants (U of ME, March, Mears & Doran):
Patricia A. Peard, Esquire and
Joan M. Fortin, Esquire

11