STATE OF MAINE                                            SUPERIOR COURT
CUMBERLAND, ss.                                          CIVIL ACTION
                                                         DOCKET NO: CV-05-327

STATE OF MAINE
Cumberland, ss, Clerk's Office
SUPERIOR COURT

SEP 18 2006

RECEIVED

CHRISTOPHER NORRIS

                    Plaintiff

                                                         ORDER ON DEFENDANTS'
                                                         MOTION FOR SUMMARY
                                                         JUDGMENT

        v.

                                                         DONALD L. GARBRECHT
                                                         LAW LIBRARY

JOE MANNING, et al.
                                                         OCT 27 2006
                    Defendants

        This case comes before the Court on Defendants' Motion for Summary

Judgment pursuant to M.R. Civ. P. 56. Defendants' Motion is DENIED.

## BACKGROUND

        Christopher Norris ("Norris") was Brunswick Ford's ("Ford") body shop

manager from beginning in July 2004. In January 2005, Norris accepted a job

offer from Lee of Auburn ("Lee"), another dealership, which was contingent

upon a background check and salary negotiations. Norris notified Ford that he

was leaving on or about January 17, 2005, and Ford employees unsuccessfully

attempted to dissuade him. On January 19, 2005, his supervisor, Joe Manning

("Manning"), called the Brunswick Police, accusing Norris of inappropriately

handling an insurance claim and stealing gasoline. The Brunswick Police asked

Norris to come to the station to discuss "insurance fraud" and theft of gasoline,

but did not arrest him. This accusation related to Norris' use of Ford's gas

account, which he had thought was routine practice, and an insurance claim that

he filed when his truck was keyed. After having his car repaired, Norris had

1

used the remaining insurance proceeds to fix his girlfriend's vehicle. The insurance company informed police that after Norris' vehicle was fixed, any remaining funds could be used however Norris wished, and that this was not fraudulent. The Brunswick Police never filed any criminal charges against Norris, which surprised Manning.

After discussing this situation with his prospective employer, Norris was told not to worry. Soon afterwards, however, following a call from Manning, Lee rescinded its offer of employment. Norris claims that Manning falsely told Lee that he had been arrested; Manning and Lee deny this allegation. He contends that he has since been unable to secure similar employment and that insurance companies with which he dealt at the body shop somehow have become aware of the Ford incident.

Norris filed a complaint for interference with contractual or advantageous economic relations, slander per se, and defamation. In response, Manning and Ford cited nineteen affirmative defenses and filed several counterclaims. Manning and Ford have filed this motion for summary judgment on all counts of Norris' complaint, contending that Norris has failed to prove causation.[1]

## DISCUSSION

1.     Summary judgment standard.

Summary judgment is proper where there exist no genuine issues of material fact such that the moving party is entitled to judgment as a matter of law. M.R. Civ. P. 56(c); *see also Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶4, 770

---

[1] Defendants' Motion for Summary Judgment seeks judgment on "all claims in Plaintiff's Complaint," but the briefing and oral argument primarily addressed the interference and slander claims. Because the motion and memoranda refer to all claims, however, the Court will also address defamation.

2

A.2d 653, 655. A genuine issue is raised "when sufficient evidence requires a fact-finder to choose between competing versions of the truth at trial." *Parrish v. Wright*, 2003 ME 90, ¶8, 828 A.2d 778, 781. A material fact is a fact that has "the potential to affect the outcome of the suit." *Burdzel v. Sobus*, 2000 ME 84, ¶6, 750 A.2d 573, 575. "If material facts are disputed, the dispute must be resolved through fact-finding." *Curtis v. Porter*, 2001 ME 158, ¶7, 784 A.2d 18, 22. When a defendant seeks summary judgment, a "plaintiff must establish a prima facie case for each element of her cause of action." *Champagne v. Mid-Maine Med. Ctr.*, 1998 ME 87, ¶9, 711 A.2d 842, 845. At this stage, the facts are reviewed "in the light most favorable to the nonmoving party." *Lightfoot v. Sch. Admin. Dist. No. 35*, 2003 ME 24, ¶6, 816 A.2d 63, 65.

2.    Interference with contractual or advantageous economic relations.

For an actionable claim of interference, there must be "a valid contract or prospective economic advantage" interfered with "through fraud or intimidation," proximately causing harm. *Barnes v. Zappia*, 658 A.2d 1086, 1090 (Me. 1995). Norris has alleged that Lee gave him a conditional offer of employment, that he informed Ford and Ford tried to dissuade him from leaving, and that Manning called Lee to discuss Norris' alleged offenses. Subsequently, Lee rescinded its offer. Manning and Ford argue that they did not proximately cause Lee to withdraw the employment offer; Norris contends that he did not lose that opportunity until Manning placed the call. Whether Manning's actions actually interfered with Norris' job offer is an issue for the finder of fact; thus, summary judgment on this claim is unwarranted.

3

3.    Slander per se.

"Slander per se refers to words that on their face without further proof or explanation injure the plaintiff in his business or occupation." *Ramirez v. Rogers*, 540 A.2d 475, 478 (Me. 1988). Given the nature of the injury, a "plaintiff may recover without proof of special damage." *Id.* For example, a plaintiff prevailed where her employer implied that she "misused company funds and engaged in dishonest and unethical acts" because this "unquestionably tends to injure her in her profession." *Marston v. Newavom*, 629 A.2d 587, 593 (Me. 1993). The Law Court affirmed a verdict in her favor, as "[t]he evidence support[ed] a claim for slander per se." *Id.*

Similarly, Norris has alleged that Manning's conversation with Lee concerned his employment[2] and that it tended to injure him professionally. If Norris' version of events is accurate, as the Court assumes it is at this stage, he has created a triable issue on the slander claim because Manning's statement struck directly at Norris' professional conduct in a job that was almost exactly the same as the one he had accepted with Lee.

A central thrust of Manning and Ford's argument is that because Norris relayed some of the circumstances to his future employer himself, he has not established that any republication by the defendants actually caused him damages. But, because Manning's communications may have affected Norris' employment, damages will be presumed if the fact finder determines that they were indeed slanderous. The content and effect of the statements are questions

---

[2] Manning concedes that Lee did not contact him; he decided to contact Lee because he wanted "to let [them] know what happened at Brunswick Ford." Manning deposition, p. 51, line 16. Manning knew prior to this call that Norris would be leaving his dealership to work at Lee.

4

of fact, and summary judgment is inappropriate on this basis.

4.    Defamation claim.

A successful defamation claim rests on the publication of false statements of fact by an unprivileged person that harms one's reputation. *Ballard v. Wagner*, 2005 ME 86, ¶10, 877 A.2d 1083, 1087. Here, Norris has alleged that Manning and Ford published false statements of fact about him to his detriment, and some facts tend to support that claim. It is possible that Manning did more than repeat his allegations of insurance fraud and theft of gas.[3] But, both sides still debate exactly what Manning said, and whether his comments actually were false and harmful remains in contention. These are genuine issues of material fact.

Additionally, Manning and Ford claim that they are entitled to immunity for their comments to Lee.[4] Maine law provides that employers who relate information about a "former employee's job performance" to a potential employer are "presumed to be acting in good faith" and may not be held civilly liable for any statements made or for the consequences of those statements. 26 M.R.S.A. §598 (2005). This presumption may be rebutted by clear and convincing evidence. *Id.* Viewing the matter in the light most favorable to the plaintiff, Norris has generated a triable issue regarding whether Manning's comments were made in good faith, especially if, as Norris claims, they included misleading characterizations – a fact that Lee and Manning dispute. Norris may

---

[3] Indeed, in his deposition, Lee CEO John Isaacson recounted a conversation with Mark Gordon, the employee who hired Norris, in which Isaacson said that "Joe Manning just called Don Lee and said that Chris has some legal trouble at the dealership and that he recommends that we don't hire him." Isaacson deposition, p. 7, lines 23-25.

[4] The defendants also raise the issue of immunity for the statements they made to police. *See Roche v. Egan*, 433 A.2d 757, 765 (Me. 1981). Any such immunity is irrelevant, however, because the statements that defendant Manning made to the police are not the primary subject of this lawsuit. Instead, this suit focuses on statements made to others in the automotive and insurance industries that may have impacted Norris' employment.

5

well be able to rebut the presumption and has produced some evidence in that regard; therefore, employer immunity is not dispositive of his claims.

Finally, Manning and Ford claim that Norris' own publication of the statements to Lee caused him to lose the job. But, as noted above, the record reveals some dispute about the effect of Norris' comments. In his deposition, Norris claims that he told Lee about Manning's allegations so that they heard it first from him and not from someone else. Following that conversation, Lee did not immediately revoke its offer. The offer was rescinded after *Manning* spoke with the owner of the dealership and, Norris contends, mischaracterized him as having been arrested. Lee refers to Norris' "arrest" as decisive in his deposition, though he also says that mere allegations could have been enough to cause him to rescind the offer because he was hiring Norris for a similar position. But, this Court must focus on what actually occurred, and Lee revoked its offer after speaking with Manning. This generates a triable issue as to causation. In addition, Norris testified in his deposition that insurance companies with which he had not spoken were somehow aware of the situation. Because both sides "published" the information, it remains for the jury to determine the effect of the respective publications.[5] The defendants are not entitled to summary judgment on the defamation claim.

Genuine issues of material fact remain on all claims regarding the nature and effect of statements made about Norris by Manning and Ford personnel.

---

[5] "The issue of publication is a question of fact for the jury." *Bakal v. Weare*, 583 A.2d 1028, 1029 (Me. 1990) (citing *Restatement 2d of Torts* §617). In *Bakal*, the Court was discussing to whom publication was made, but its analysis is applicable to the debate regarding the effect of publication in this case.

The entry is:

Defendants' motion for summary judgment is DENIED.

DATE: _September 18, 2006_

Roland A. Cole
Justice, Superior Court

COURTS
ıd County
ıx 287
ө 04112-0287

GUY LORANGER ESQ
110 MAIN STREET SUITE 1520
SACO ME 04072

COURTS
ıd County
ıx 287
ө 04112-0287

BRENDAN RIELLY ESQ
PO BOX 4510
PORTLAND ME 04112