Mc✓

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-19-01

JOSEPH HOGAN,

     Plaintiff

v.

     ORDER

PAUL FOLLANSBEE,

     Defendant

Before the court is a motion for attachment and trustee process by plaintiff Joseph Hogan. Hogan seeks an attachment in the amount of $25,000 against defendant Paul Follansbee based on claims of breach of contract, negligent misrepresentation, professional negligence, and violations of the Unfair Trade Practices Act.

The court may approve attachment and trustee process if it finds, based on the affidavits submitted, that it is more likely than not that the plaintiff will recover judgment, including interest and costs, equal to or greater than the sum of the attachment and any available insurance or security. M.R.Civ.P. 4A(c), 4B(c). In this case Hogan's motion is based on his verified complaint, his supplemental affidavit, and the attached documents. His motion asserts that there is no available insurance or other security, and Follansbee has not contested that assertion.

Hogan's claims arise from a contract under which Follansbee undertook to do restoration work on a classic wooden powerboat. The work included the installation of a "5200 bottom,"[1] the removal of some dry rot, and refinishing.

---

[1] A "5200 bottom" is apparently a procedure named after a 3M glue/sealant that involves removing and restoring the bottom of the vessel.

REC'D CUMB CLERKS OFC
FEB 19 '19 AM 11:25

Although Hogan complains that Follansbee had the boat in his shop from October 2012 until January 2018, the emails in the record show that a contract for the restoration work was not signed until February 2016. Moreover, that contract (Ex. E to Verified complaint) was a "time and materials" agreement that did not contain an agreed completion date. Indeed, it stated that restoring a wooden boat is "an artistic venture" and that "determining a finish date for art is difficult." The contract also did not set a total contract price or any upper price limit. It specified only that Follansbee would charge $60.00 for labor and would seek progress payments, based on work performed and on anticipated future work, as he went along.

Thereafter Follansbee worked on the boat from January 2016 to early June 2016, asking for and receiving progress payments totaling approximately $28,000. At that point Follansbee's work apparently ceased until October 2016. The record does not reflect that Hogan objected at that time.

Based on the resumption of work in October and what he described as payment needed to continue work, Follansbee requested $9500 in December 2016. Follansbee thereafter wrote an email in early January suggesting that, until that amount was paid, he was not going to continue working on the boat.

Hogan took exception to Follansbee's email and said he thought Follansbee understood he would be paid $5000 in late December and another $5000 in mid-January. Hogan complained in that email that the boat had not been finished the preceding summer and asked whether Follansbee wanted to Hogan to reclaim the boat or whether Follansbee would "keep going without further delay."

Nevertheless Hogan paid the $5000 in mid-January (he had previously also paid $5000 in late December) and work apparently resumed. When Follansbee asked for another $6000 in March,

2

however, Hogan responded that he thought $40,000 would be enough to complete the project (he had at that time paid $38,375) and asked for an estimate to complete the job. Hogan says that he thought that this would induce Follansbee to complete the work, but he did not hear from Follansbee again until January 2018, when Follansbee said he was planning to start work on Hogan's boat again later that month and asked for $ 2500 "so I can get started." In response, Hogan told Follansbee not to proceed and reclaimed his boat.

There is a dispute between the parties as to whether Follansbee had orally promised or represented that boat would be finished in 2016. On the existing record the court cannot determine that Hogan is more likely to prevail on that issue. Overall, Follansbee appears to have approached the project in a dilatory manner, but Hogan was at various times equally dilatory in acquiescing to the delay.

However, Hogan is not seeking an attachment based on the delay in the work. Instead, Hogan has offered an estimate by another boat restorer that Follansbee was only halfway through the job and that the value of the work he had performed was only $13,000 – instead of the $38,375 that Hogan had paid. Hogan is thus seeking an attachment for $25,000 that he contends he overpaid.

In legal terms, the court understands Hogan is contending that Follansbee violated an implied warranty in the repair contract that the work would be performed in a reasonably skillful and workmanlike manner. *See Gosselin v. Better Homes Inc.,* 256 A.2d 629, 639-40 (Me. 1969). There is some authority for the proposition that the warranty of reasonable workmanship includes the concept that the contracting party shall not be unreasonably overcharged. *See Marcus v. Lee S. Wilbur & Co.,* 588 A.2d 757, 759 (Me. 1991).

3

However, in this case Hogan had agreed to Follansbee's labor rate and continued to pay the amounts Follansbee asked for up through January of 2017. Under the circumstances, the court concludes that on this record there is an equally good argument that even if Hogan entered a contract with a dilatory contractor who overcharged him, there was no violation of the contract.[2]

The entry shall be:

Plaintiff's motion for an attachment is denied. The clerk shall incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: February _15_ , 2019

Thomas D. Warren
Justice, Superior Court

Entered on the Docket: 2/21/19
MC

**Plaintiff-Robert Kline, Esq.**
**Defendant-Kenneth Pierce, Esq.**

---

[2] In his motion for attachment, Hogan does not contend that Follansbee sought payment for work not performed or that he misrepresented the number of hours of work for which he sought progress payments.

4